Ryan D. Watstein (*pro hac vice* pending)
rwatstein@kcozlaw.com
Kristapor Vartanian (SBN 275378)
kvartanian@kcozlaw.com
**KABAT CHAPMAN & OZMER LLP**
333 S. Grand Avenue, Suite 2225
Los Angeles, CA 90071
Telephone: (213) 493-3980
Facsimile: (404) 400-7333

*Counsel for Defendant Charter Communications, Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD NAKAI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC, d/b/a SPECTRUM,<br><br>Defendant. | Case No: 2:19-cv-08035-GW-SS<br><br>**DEFENDANT CHARTER COMMUNICATIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  March 5, 2020<br>Time:  8:30 a.m.<br>Ctrm:  9D (9th Floor)<br> 350 West 1st Street<br> Los Angeles, CA 90012<br><br>Hon. George H. Wu<br><br>First. Am. Compl. Filed: Jan. 23, 2020<br><br>Trial Date:  No Trial Date Set |

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 5, 2020, at 8:30 a.m., in Courtroom 9D (9th Floor) of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, CA 90012, Defendant Charter Communications, Inc. ("Charter") will and hereby does move the Court for an Order dismissing Plaintiff Richard Nakai's First Amended Class Action Complaint ("FAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  Charter moves to dismiss the entirety of the FAC because Plaintiff has not pled any factual allegations in support of his Telephone Consumer Protection Act ("TCPA") claim.  In fact, the few factual allegations Plaintiff pleads actually contradict his allegation that an automatic telephone dialing system was used to place the calls at issue.

As an alternative, Charter will and hereby does move the Court for an Order staying this action pending the United States Supreme Court's decision in *Barr v. American Association of Political Consultants, Inc.*, No. 19-631 (U.S. Jan. 10, 2020), which is currently reviewing whether the TCPA restriction under which Plaintiff sues is unconstitutional, and thus whether it can be enforced against Charter.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on January 28 and 30, 2020.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the Request for Judicial Notice filed concurrently herewith, the complete file and record in this action, and such further and other matters as the Court may allow.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KABAT CHAPMAN & OZMER LLP

DATED:  February 6, 2019

/s/ Kristapor Vartanian

By: _____

Kristapor Vartanian
*Attorney    for    Defendant    Charter
Communications, Inc.*

2

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

II.     FACTUAL BACKGROUND .................................................................... 2

III.    ARGUMENT ........................................................................................... 3

        A.      Plaintiff's FAC is Devoid of Any Facts to Support His
                TCPA Claim, and Thus Fails as a Matter of Law. .................... 3

        B.      Alternatively, the Court Should Stay This Case Pending the
                Supreme Court's Outcome-Determinative Decision in
                *AAPC*. .......................................................................................... 6

        1.      *AAPC*'s Procedural Background. ............................................... 6

        2.      A Stay is Appropriate Pending the Supreme Court's
                Decision in *AAPC*. .................................................................... 9

                a.      A Stay Poses No Risk of Damage or Harm to
                        Plaintiff. ........................................................................ 9

                b.      Charter Will Suffer Hardship and Inequity If This
                        Action Proceeds............................................................ 11

                c.      A Stay Will Promote Judicial Efficiency and Would
                        Preserve Judicial Resources. ........................................ 12

                d.      A Stay Will Further the Public Interest and the
                        Interests of Persons Not Parties to this Action.............. 13

                e.      Courts Routinely Grant Stays Where Supreme Court
                        Decisions May Have an Impact on the Case.................. 13

IV.     CONCLUSION ..................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu-Hajar v. AutoNation, Inc.*,
No. 17-03505, 2017 WL 10591886
(C.D. Cal. Aug. 17, 2017) ........................................................................... 12

*ACA Int'l v. FCC*,
885 F.3d 687 (D.C. Cir. 2018) ..................................................................... 14

*Am. Ass'n. of Political Consultants, Inc. v. FCC*,
923 F.3d 159 (4th Cir. 2019) ................................................................ 6, 7, 8

*Am. Ass'n of Political Consultants v. Sessions*,
323 F. Supp. 3d 737 (E.D.N.C. 2018) ........................................................... 6

*Arkansas Writers' Project, Inc. v. Ragland*,
481 U.S. 221 (1987) ...................................................................................... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... 3

*Barr v. Am. Ass'n of Political Consultants*,
No. 19-631 (U.S. Jan. 10, 2020) ........................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................... 3

*Chi., Indianapolis, & Louisville Ry. Co. v. Hackett*,
228 U.S. 559 (1913) ...................................................................................... 8

*Clinton v. Jones*,
520 U.S. 681 (1997) ...................................................................................... 9

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) ......................................................................... 9

*Coulter v. Ascent Mortg. Res. Grp., LLC*,
No. 2:16-cv-02237, 2017 WL 2219040
(E.D. Cal. May 18, 2017) ............................................................................ 12

*Daniels v. ComUnity Lending, Inc.*,
No. 13-cv-488, 2014 WL 51275
(S.D. Cal. Jan. 6, 2014) ................................................................................. 4

*Doerken v. USAA Sav. Bank*,
No. 16-cv-08824, 2017 WL 1534186
(C.D. Cal. Apr. 26, 2017) ............................................................................ 10

*Duguid v. Facebook, Inc.*,
926 F.3d 1146 (9th Cir. 2019) ................................................................... 7, 8

*Duran v. Ocwen Mortg. Servicing, Inc.*,
No. 17-905, 2017 WL 10526138
(C.D. Cal. Aug. 21, 2017)............................................................................... 9

*El Dorado Cmty. Serv. Ctr. v. Cnty. of Los Angeles*,
No. 15-7998, 2017 WL 6017297
(C.D. Cal. Jan. 3, 2017) ................................................................................... 6

*Eric B. Fromer Chiropractic, Inc. v. N.Y. Life Ins. and Annuity Corp.*,
No. 15-CV-4767, 2015 WL 6579779
(C.D. Cal. Oct. 19, 2015)................................................................. 10, 12, 13

*Errington v. Time Warner Cable Inc.*,
No. 2:15-CV-02196, 2016 WL 2930696
(C.D. Cal. May 18, 2016) ....................................................................... 11, 14

*Ex parte Siebold*,
100 U.S. 371 (1879) ........................................................................................ 8

*Fontes v. Time Warner Cable Inc.*,
No. 14-2060, 2015 WL 9272790
(C.D. Cal. Dec. 17, 2015)................................................................. 10, 12, 14

*Freidman v. Massage Envy Franchising*,
No. 13:12-cv-02962, 2013 WL 3026641
(S.D. Cal. June 13, 2013)................................................................................ 4

*Gallion v. United States*,
772 F. App'x 60 (9th Cir. Jul. 8, 2019) ......................................................... 7

*Ibey v. Taco Bell Corp.*,
No. 12-CV0583, 2012 WL 2401972
(S.D. Cal. June 18, 2012)................................................................................ 4

*Kingdom of Sweden v. Melius*,
No. 14-04492, 2015 WL 7574463
(C.D. Cal. Nov. 25, 2015)............................................................................... 9

*Kolloukian v. Uber Techs., Inc.*,
No. 15-2856, 2015 WL 9598782
(C.D. Cal. Dec. 14, 2015)............................................................................. 10

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ............................................................................. 9, 12, 13

*Lofton v. Verizon Wireless LLC*,
No. 13-cv05665, 2015 WL 1254681
(N.D. Cal. Mar. 18, 2015)............................................................................... 4

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) ........................................................................ 9

*Maier v. J.C. Penney Corp.*,
No. 13CV0163, 2013 WL 3006415
(S.D. Cal. June 13, 2013)................................................................................ 5

iii

*Makaron v. GE Sec. Mfg., Inc.*,
  No. 14-1274, 2014 WL 12614468
  (C.D. Cal. July 31, 2014)....................................................................4

*Marks v. Crunch San Diego, LLC*,
  904 F.3d 104 (9th Cir. 2018) .............................................................5

*McElrath v. Uber Tech., Inc.*,
  No. 16-cv-07241, 2017 WL 1175591
  (N.D. Cal. Mar. 30, 2017)................................................................14

*McGregory v. 21st Century Ins. & Fin. Serv., Inc.*,
  No. 1:15-CV-00098, 2016 WL 11643678
  (N.D. Miss. Feb. 2, 2016) ..................................................................8

*McArdle v. AT&T Mobility LLC*,
  No. 09-1117, 2010 WL 2867305
  (N.D. Cal. July 20, 2010)..................................................................11

*Nuccio v. Duve*,
  No. 7:13-CV-1556, 2015 WL 1189617
  (N.D.N.Y. Mar. 16, 2015) ................................................................13

*Priester v. eDegreeAdvisor, LLC*,
  No. 5:15-cv-04218, 2017 WL 4237008
  (S.D. Cal. Sept. 25, 2017).................................................................4

*Ramirez v. Trans Union, LLC*,
  No. 12-cv-00632, 2015 WL 6159942
  (N.D. Cal. June 22, 2015).................................................................10

*Reed v. Town of Gilbert*,
  135 S. Ct. 2218 (2015)........................................................................8

*Small v. GE Capital, Inc.*,
  No. 15-2479, 2016 WL 4502460
  (C.D. Cal. June 9, 2016)...................................................................14

*Smith v. Aitima Medical Equip., Inc.*,
  No. 16-00339, 2016 WL 4618780
  (C.D. Cal. July 29, 2016)...............................................................4, 5

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016).......................................................................13

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .............................................................3

*Stone v. Sterling Infosystems, Inc.*,
  No. 2:15-cv-00711, 2015 WL 4602968
  (E.D. Cal. Jul. 29, 2015)..................................................................11

*Tovar v. Hosp. Housekeeping Sys.*,
  No. 09-03487, 2009 WL 10672526
  (C.D. Cal. Nov. 2, 2009)...................................................................10

iv

*Tuck v. Portfolio Recovery Assocs., LLC*,
   No. 19-CV-1270, 2019 WL 5212392
   (S.D. Cal. Oct. 16, 2019) ......................................................................................... 4

*Weisberg v. Stripe, Inc.*,
   No. 16-CV-00584, 2016 WL 3971296
   (N.D. Cal. July 25, 2016)......................................................................................... 4

**Statutes**

Telephone Consumer Protection Act,
   47 U.S.C. § 227 *et seq.* ...................................................................................*passim*

Cable Communications Policy Act of 1984,
   47 U.S.C. § 551(c)(1)-(2) ..................................................................................... 13

**Rules**

Federal Rule of Civil Procedure 12(b)(6)............................................................. 1, 2, 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.   **INTRODUCTION**

The Telephone Consumer Protection Act ("TCPA") does not impose liability for placing telephone calls; it only regulates calls made with specific technology. Here, Plaintiff alleges that Charter violated the TCPA by calling him with an automatic telephone dialing system ("ATDS") without his prior consent.

However, Plaintiff's First Amended Class Action Complaint ("FAC") is devoid of any factual allegations suggesting—let alone plausibly—that Charter called him with an ATDS.  Instead, and despite having had two opportunities to state a claim, Plaintiff's FAC merely parrots the statutory definition of an ATDS, which is insufficient to state a claim under this Court's own precedent.  Moreover, here, Plaintiff's only factual allegations about the calls—that Plaintiff was met with a live person when he picked up the phone—actually ***belie*** the use of an ATDS.  Because the courthouse doors do not open for any person who alleges they received a call from a live person, the Court should dismiss Plaintiff's FAC under Federal Rule of Civil Procedure 12(b)(6).

Further, the TCPA's ATDS restriction (the "automated-call ban") is an unconstitutional content-based restriction on speech that fails strict scrutiny and thus cannot be enforced against Charter.  This defense is currently being reviewed by the U.S. Supreme Court in *Barr v. Am. Ass'n. of Political Consultants,* No. 19-631 (U.S. Jan. 10, 2020) ("*AAPC*"), which will be decided this term.  Therefore, if the Court does not dismiss Plaintiff's FAC, it should stay this action pending the Supreme Court's resolution of *AAPC*, which could be outcome-determinative in this nationwide class action.  Indeed, all relevant factors weigh heavily in favor of a stay.

First, a stay would not harm Plaintiff, who does not seek any actual damages and does not contend he is suffering an ongoing harm.  Instead, it would benefit Plaintiff by preventing him from incurring significant time and expense in discovery and motion practice, all of which could be for naught following a ruling in *AAPC*.

Second, and relatedly, if this action is not stayed, Charter would be prejudiced by incurring substantial costs that will likely end up being unnecessary.

Third, a stay would promote judicial efficiency because the ruling in *AAPC* will determine whether and to what extent Plaintiff's claim against Charter can proceed.  For example, if the Supreme Court determines that the TCPA's automated-call ban is unconstitutional and cannot be severed—which is the general rule in the case of a constitutional violation—that would eliminate Charter's liability entirely. If forced to proceed without the clarity of the Supreme Court's decision, the parties will have to engage in (and the Court will have to police) significant discovery and motion practice related to the merits of this case and the propriety of class certification, all of which may be rendered moot by a decision in *AAPC*.

Fourth, a stay would promote the public interest because the public has an interest in the efficient, fair administration of the judicial system.  The stay would also prevent discovery that will unnecessarily burden and invade the privacy interests of non-parties.  Such concerns are particularly acute in a nationwide TCPA class action, where mass subpoenas to cellular carriers are often used to identify owners and users of telephone numbers, where many non-parties will be deposed, and where many discovery materials are subject to the confines of the Cable Privacy Act.

For these reasons and the others discussed herein, Charter respectfully requests that this Honorable Court: (1) dismiss Plaintiff's TCPA claim pursuant to Rule 12(b)(6), with prejudice; or, alternatively, (2) stay this case pending the Supreme Court's decision in *AAPC*.

## II.   FACTUAL BACKGROUND

On September 17, 2019, Plaintiff filed this putative class action Complaint, alleging that Charter called him using an "avatar" pre-recorded message from a "voice-activated" representative.  Compl. ¶¶ 22-23.  Based on that allegation, Plaintiff sought to certify a purported class of persons who Charter allegedly called

"using the same pre-recorded voice technology." *Id*. ¶ 30.

After a meet and confer with Charter, and conceding the outright falsity of his initial allegations, Plaintiff then filed the FAC.  Therein, Plaintiff removed all references to "avatars," "voice-activated" systems, and "pre-recorded voice technology," abandoning his pre-recorded voice claim entirely.  *See* FAC.  Instead, in his FAC, Plaintiff concedes that he received a telephone call from a ***live*** representative named "Michelle," in direct contrast to his initial allegations.  *Id*. ¶¶ 20-24.  In a last-ditch effort to save his suit, Plaintiff then leaps to the bare legal conclusion that Charter "utilized an automatic telephone dialing system" to make the purported calls—allegedly violating the TCPA's automated-call ban, 47 U.S.C. § 227(b)(1)(A)(iii).  *Id*. ¶¶ 17, 39-40.

As explained herein, Plaintiff's conclusory allegations lack even a single factual inkling that the purported calls were made with an ATDS, despite having had two opportunities to plead a viable claim.  As such, Charter now moves to dismiss the FAC in its entirety or, alternatively, to stay this case pending the U.S. Supreme Court's forthcoming decision in *AAPC*.

## III.    ARGUMENT

### A. Plaintiff's FAC is Devoid of Any Facts to Support His TCPA Claim, and Thus Fails as a Matter of Law.

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is not plausible and dismissal is appropriate where the complaint lacks sufficient factual allegations to support a cognizable legal theory.  *Id*. at 555.  Courts may not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *as amended*, 275 F.3d 1187 (9th Cir. 2001).  Nor may courts accept as

true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Thus, and as this Court has held, to state a TCPA claim of the type asserted here, a plaintiff must include ***specific facts*** supporting a reasonable inference that an ATDS was used, and may not just parrot the statutory definition of ATDS. *Makaron v. GE Sec. Mfg., Inc.*, No. CV-14-1274, 2014 WL 12614468, at *2 (C.D. Cal. July 31, 2014) (Wu, J.) (dismissing TCPA claim where plaintiff regurgitated definition of ATDS, rather than pleading specific facts suggesting ATDS was used); *Priester v. eDegreeAdvisor, LLC*, No. 5:15-cv-04218, 2017 WL 4237008, at *2 (S.D. Cal. Sept. 25, 2017) (dismissing TCPA claim and rejecting contention that plaintiff's pleading obligation "is satisfied by generically alleging the use of an ATDS by a defendant, in a manner that simply parrots the statutory language"); *Lofton v. Verizon Wireless LLC*, No. 13-cv-05665, 2015 WL 1254681, at *5 (N.D. Cal. Mar. 18, 2015) (dismissing TCPA claim where allegations "track[ed] the language of the statute" and lacked "specific supporting allegations"); *Ibey v. Taco Bell Corp.*, No. 12-CV-0583, 2012 WL 2401972, at *3 (S.D. Cal. June 18, 2012) (similar).[1]

Plaintiff falls woefully short of meeting his burden in this regard here, as his FAC is devoid of ***any*** facts to support his conclusion that the subject calls were made with an ATDS.  In lieu of providing facts, Plaintiff merely parrots the definition(s) of an ATDS, as this Court has held is improper:

---

[1] *See also*, *e.g.*, *Tuck v. Portfolio Recovery Assocs., LLC*, No. 19-CV-1270, 2019 WL 5212392, at *3 (S.D. Cal. Oct. 16, 2019) (similar); *Smith v. Aitima Medical Equip., Inc.*, No. CV 16-00339, 2016 WL 4618780, at *6 (C.D. Cal. July 29, 2016) (similar); *Weisberg v. Stripe, Inc.*, No. 16-CV-00584, 2016 WL 3971296, at *5 (N.D. Cal. July 25, 2016) (similar); *Daniels v. ComUnity Lending, Inc.*, No. 13-cv-488, 2014 WL 51275, at *5 (S.D. Cal. Jan. 6, 2014) (similar); *Freidman v. Massage Envy Franchising, LLC*, No. 13:12-cv-02962, 2013 WL 3026641, at *2-3 (S.D. Cal. June 13, 2013) (similar).

4

| **TCPA and Ninth Circuit Court of Appeals ATDS Definitions** | **FAC** |
|---|---|
| <u>TCPA</u>: "The term 'automatic telephone dialing system' means equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). <br><br> <u>Ninth Circuit</u>: "'automatic telephone dialing system' means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018). | "Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*." FAC ¶ 39; *see also* ¶ 17. |

Moreover, here, Plaintiff's FAC is not just devoid of factual allegations supporting an ATDS claim; his only specific factual allegation—that he was met with a live representative on the one call he picked up—directly **undercuts** that claim. FAC ¶ 22. Nothing about such a telephone conversation allows the Court to draw an inference that an ATDS was used. *See Maier v. J.C. Penny Corp., Inc.*, No. 13cv0163, 2013 WL 3006415, at *3 (S.D. Cal. June 13, 2013) (stating that "generic content of a message, a description of a robotic sounding voice, or a lack of human response" are "indirect factual allegations supporting a reasonable inference of use of an ATDS"); *Smith*, 2016 WL 4618780, at *6 ("Experiencing dead air on several calls raised a reasonable inference that the caller used an ATDS."). Plaintiff does not and cannot allege any of the typical hallmarks that raise a reasonable inference of ATDS use. Instead, his allegations suggest the opposite: that "Michelle" initiated the call herself, using a telephone.

Accordingly, the Court should dismiss Plaintiff's TCPA claim with prejudice,

as Plaintiff has already amended his complaint once, and any further amendment would be futile. *See El Dorado Cmty. Serv. Ctr. v. Cty. of Los Angeles*, No. 15-7998, 2017 WL 6017297, at *3 (C.D. Cal. Jan. 3, 2017) (denying leave to amend because "Plaintiff has already amended his Complaint once and has failed to provide . . . any facts . . . that indicate leave to amend would not be futile.")

**B. Alternatively, the Court Should Stay This Case Pending the Supreme Court's Outcome-Determinative Decision in *AAPC*.**

Alternatively, the Court should stay this case pending the Supreme Court's decision in *AAPC*. In that case, the Supreme Court will determine whether the entire ATDS restriction—the only claim at issue in this case—violates the First Amendment, and if so, what the proper remedy is. If the Supreme Court holds that severance is not a proper remedy, in line with the general rule, that will end this case.

**1. *AAPC*'s Procedural Background.**

In 2016, the American Association of Political Consultants ("AAPC") sued the Attorney General and Federal Communications Commission ("FCC") in the Eastern District of North Carolina, contending that the TCPA's automated-call ban (47 U.S.C. § 227(b)(1)(A)(iii)) violated the First Amendment. *See Am. Ass'n. of Political Consultants v. Sessions*, 323 F. Supp. 3d 737, 739 (E.D.N.C. 2018). The AAPC argued that: (1) the automated-call ban prohibited speech; but (2) contained content-based statutory exceptions that favored certain speech in violation of the First Amendment (including the "government debt exception," which exempts calls "made solely to collect a debt owed to or guaranteed by the United States"). *Id*. at 741. The district court concluded the automated-call ban was a content-based restriction subject to strict scrutiny, but that the statute satisfied that standard. *Id*. at 744-45.

On appeal, the Fourth Circuit agreed the TCPA's automated-call ban facially distinguished between phone calls based on their content, and, therefore, the exception was subject to strict scrutiny. *See Am. Ass'n of Political Consultants, Inc.*

*v. FCC*, 923 F.3d 159, 166 (4th Cir. 2019).  Unlike the district court, however, the Fourth Circuit concluded that the government debt exception could ***not*** survive strict scrutiny because it rendered the automated-call ban fatally underinclusive by authorizing many of the calls that the automated-call ban was enacted to prohibit.  *Id*. at 167-68.  After holding the automated-call ban was unconstitutional, the Fourth Circuit severed the government debt exception from the statute.  *Id*. at 171.

Thereafter, both parties sought the Supreme Court's review of the Fourth Circuit's decision.  On the one hand, the government argued that the government debt exception was content neutral, and, therefore, its addition to the automated-call ban did not transform the statute into a content-based speech restriction.  *See* Request for Judicial Notice filed concurrently herewith ("RJN"), Ex. A, at 6.  On the other hand, the AAPC argued that the automated-call ban *itself* is a content-based restriction on speech that cannot survive strict scrutiny and thus must be struck down in its entirety (rather than saved by severance).  *See* RJN, Ex. B, at 13-19.[2]

Last month, the Supreme Court granted *certiorari* to examine: (1) whether the government debt exception restriction violates the First Amendment; and (2) whether the proper remedy for "*any*" constitutional violation is to sever the exception (rather

---

[2] The Ninth Circuit has also twice addressed the constitutionality of the TCPA's automated-call ban, holding that it is unconstitutional, but applying severance as a remedy.  *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1151 (9th Cir. 2019); *Gallion v. United States*, 772 F. App'x 60, 605 (9th Cir. Jul. 8, 2019) (same).  Facebook and Charter (the defendant in *Gallion*) each filed petitions for *certiorari* in their respective cases, and those petitions are apparently being held by the Court pending resolution of *AAPC*, as the petitions have been distributed for conference but neither granted nor denied.  *See* RJN, Exs. D & E.  Notably, several parties filed amicus briefs in support of the *Duguid* and *Gallion* petitions, arguing that the TCPA's automated-call ban is unconstitutional and cannot be saved by severance.  *See* RJN, Exs. F (at 4-11) & G (at 16-21).  That three separate parties petitioned the Supreme Court at the same time to resolve the same question, that several additional parties joined in such petitions, and that the Supreme Court ultimately agreed to review the questions raised demonstrates the importance of the forthcoming *AAPC* decision.

than invalidating the statutory provision—here, the automated-call ban—altogether). *See* RJN, Ex. C.  Oral argument in *AAPC* will likely occur in April and, if heard, the case will be decided by June 2020, as it is the custom of the Supreme Court to "issue all decisions in argued cases before the start of its summer recess in June." *McGregory v. 21st Century Ins. & Fin. Serv, Inc*., No. 1:15-CV-00098, 2016 WL 11643678, at *3 (N.D. Miss. Feb. 2, 2016).

At that time, the Supreme Court will almost certainly hold that the automated-call ban violates the First Amendment and is thus unconstitutional, as both circuit courts to examine the issue have held, along with several district courts.  *See Am. Ass'n. of Political Consultants*, 923 F.3d at 166 (holding the TCPA's automated-call ban is unconstitutional); *Duguid*, 926 F.3d at 1151 (same).  The Supreme Court is also likely to hold that invalidation of the automated-call ban, rather than severance, is the appropriate remedy, given that severance is an atypical constitutional remedy and Supreme Court precedent holds that the remedy for a First Amendment-violative restriction is invalidation of the restriction itself.  *See Reed v. Town of Gilbert*, --- U.S. ----, 135 S. Ct. 2218, 2232-33 (2015) (holding local ordinance was content-based restriction on speech because existence of various exemptions and invalidating ordinance's restrictions themselves as constitutional remedy, rather than severing exemptions); *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 223-224, 234 (1987) (holding that sales tax on magazines, which contained exemption for "religious, professional, trade, or sports periodical[s]" was selective taxation and "invalid under the First Amendment.").

Should the Supreme Court determine that the automated-call ban is unconstitutional and cannot be saved through severance, the statutory provision on which this lawsuit is based will be invalidated and Plaintiff's sole ATDS claim will be extinguished.  *Chi., Indianapolis, & Louisville Ry. Co. v. Hackett*, 228 U.S. 559, 566 (1913) (stating that "an unconstitutional act is not a law" and is "inoperative as

1  if it had never been passed"); *Ex parte Siebold*, 100 U.S. 371, 376 (1879) ("An
2  unconstitutional law is void[.]").

### 2.  <u>A Stay is Appropriate Pending the Supreme Court's</u><br><u>Decision in *AAPC*.</u>

5          Though the Court should dismiss this case outright for the reasons explained
6  above, if it does not, it should stay the case pending a decision in *AAPC*.  District
7  courts have "broad discretion to stay proceedings as an incident to [their] power to
8  control [their] own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis*
9  *v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *accord Lockyer v. Mirant Corp.*, 398 F.3d
10  1098, 1109 (9th Cir. 2005).  In determining whether to grant a *Landis* stay, courts
11  within this Circuit consider three factors: (1) harm the non-moving party may suffer
12  as a result of the stay; (2) hardship the moving party may suffer if a stay is denied;
13  and (3) "the orderly course of justice measured in terms of simplifying or
14  complicating of issues, proof, and questions of law which could be expected from a
15  stay" (*i.e.*, judicial economy).  *See*, *e.g.*, *Lockyer*, 398 F.3d at 1109; *Duran v. Ocwen*
16  *Mortg. Servicing, Inc.*, No. 17-905, 2017 WL 10526138, at *2 (C.D. Cal. Aug. 21,
17  2017) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).  Here, each of
18  these factors weighs strongly in favor of granting a *Landis* stay.

### a.  A Stay Poses No Risk of Damage or Harm to Plaintiff.

20          First, the requested stay poses no risk of harm to Plaintiff.  Notably, there is no
21  likelihood of damage or harm under this factor merely because the stay may delay
22  the plaintiff's recovery of money damages.  *See*, *e.g.*, *CMAX*, 300 F.2d at 268-69
23  (non-moving party did not make "strong showing in support of its assertion that it
24  will suffer irreparable damages and a miscarriage of justice" where delay in trial
25  would only delay recovery of monetary damages); *Kingdom of Sweden v. Melius*, No.
26  CV 14-04492, 2015 WL 7574463, at *3 (C.D. Cal. Nov. 25, 2015) (no prejudice to
27  plaintiff where stay delays recovery of damages).  This is particularly relevant here

28

because Plaintiff does not even request actual damages, only statutory damages.  *See* 47 U.S.C. § 227(b)(3) ($500 for negligent violation; up to $1,500 for willful violation); *see* FAC ¶¶ 41-42 (seeking statutory damages).  Accordingly, Plaintiff will not suffer any legally cognizable harm if the Court grants a stay.

Instead, if anything, Plaintiff would be harmed if a stay is ***not*** issued because he could incur significant trouble and expense in discovery only to later find out that his claim is entirely barred.  *See*, *e.g.*, *Fontes v. Time Warner Cable, Inc.*, No. 2:14-cv-02060, 2015 WL 9272790, at *5 (C.D. Cal. Dec. 17, 2015) (stay of TCPA putative class action did not harm plaintiffs, rather a "stay could save substantial efforts by the parties"); *Kolloukian v. Uber Techs., Inc.*, No. CV 15-2856, 2015 WL 9598782, at *1 (C.D. Cal. Dec. 14, 2015) (stay of TCPA action pending D.C. Circuit decision would "reduc[e] the burden on the parties").

Moreover, the Supreme Court has already granted *certiorari* in *AAPC*, a briefing schedule is forthcoming with oral argument likely to occur in April, and, in accordance with the Supreme Court's customary practice, its decision should be published by no later than the end of its term in June 2020.  Given this timeline, Charter's requested stay will result in a less-than-five-month delay.  A stay of this short duration necessarily limits any potential risk of damage to Plaintiff.  *See Doerken v. USAA Sav. Bank*, No. 16-cv-08824, 2017 WL 1534186, at *3 (C.D. Cal. Apr. 26, 2017) ("[T]he appeal is not likely to remain pending for an extended period of time, and the possible prejudice to Plaintiff is minimal."); *Ramirez v. Trans Union, LLC*, No. 12-cv-00632, 2015 WL 6159942, at *2 (N.D. Cal. Jun. 22, 2015) ("The possible prejudice to Plaintiff that will result from a stay is minimal, as [the] decision will likely be issued within a year per the Supreme Court's customary practice."); *Eric B. Fromer Chiropractic, Inc. v. N.Y. Life Ins. And Annuity Corp.*, No. CV 15-04767, 2015 WL 6579779, at *2 (C.D. Cal. Oct. 19, 2015) (same).

The posture of this action also weighs against a finding of prejudice, as the case

is in its early stages, no trial date has been set, and neither party has commenced discovery. *See*, *e.g.*, *Tovar v. Hospital Housekeeping Sys.*, No. 09-03487, 2009 WL 10672526, at *4 (C.D. Cal. Nov. 2, 2009) (early procedural posture of a case "weighs against a finding of prejudice").

For these reasons, the first factor weighs heavily in favor of a stay.

### b. Charter Will Suffer Hardship and Inequity If This Action Proceeds.

The second factor—whether the moving party is likely to suffer hardship or inequity if the Court does not grant the stay—also heavily weighs in favor of a stay. Indeed, if the case is not stayed pending a decision in *AAPC*, Charter will have to invest substantial resources litigating this nationwide putative class action, despite the very real possibility that the Supreme Court will render that investment unnecessary (and despite Plaintiff's failure to state a claim). *Stone v. Sterling Infosystems, Inc*., No. 2:15-cv-00711, 2015 WL 4602968, at *2 (E.D. Cal. Jul. 29, 2015) ("The Court sees no reason why Plaintiff should be allowed to conduct discovery on this large class thereby forcing Defendant to incur unnecessary expenses, until it can be established that this case will be proceeding forward."); *Errington v. Time Warner Cable Inc*., No. 2:15-CV-02196, 2016 WL 2930696, at *4 (C.D. Cal. May 18, 2016) (in granting stay of TCPA case pending resolution of D.C. Circuit decision, noting that "[i]f the case is not stayed, Defendant may suffer hardship in conducting discovery and trial preparation"); *McArdle v. AT&T Mobility LLC*, No. C 09-1117, 2010 WL 2867305, at *4 (N.D. Cal. July 20, 2010) (granting stay in light of forthcoming Supreme Court decision "[b]ecause the viability of prosecuting this case as a class action is in question, [and] it is not apparent that Defendants should bear this additional expense"). For these reasons, proceeding with this case prior to a decision in *AAPC* would substantially and unnecessarily prejudice Charter. Thus, the second factor strongly supports a stay.

### c.  A Stay Will Promote Judicial Efficiency and Would Preserve Judicial Resources.

The third factor—judicial economy—also strongly militates in favor of a stay. This is especially true because the Supreme Court's decision in *AAPC* may be outcome-determinative and because this case is a putative class action that will involve significant discovery and motion practice regarding the merits and class certification, all of which the Court will have to police and decide.  *See Abu-Hajar v. AutoNation, Inc.*, No. 17-03505, 2017 WL 10591886, at *3 (C.D. Cal. Aug. 17, 2017) ("[I]f the case is not stayed pending the Supreme Court's decision . . . the Court [may] [] unnecessarily expend[] substantial time and resources in litigating this putative class action lawsuit."); *Eric B. Fromer Chiropractic, Inc.*, 2015 WL 6579779, at *2 (staying TCPA class action pending Supreme Court decision in another case as the Court would "face the risk of dedicating substantial resources to proceedings that may ultimately prove unnecessary").

Further, even if the Supreme Court determines that the automated-call ban is constitutional, allowing the Supreme Court to decide *AAPC* before proceeding in this case would promote judicial efficiency and ensure a uniform, national interpretation of the TCPA and the defenses discussed herein.[3]  *Coulter v. Ascent Mortg. Res. Grp., LLC*, No. 2:16-cv-02237, 2017 WL 2219040, at *4 (E.D. Cal. May 18, 2017) (stay warranted in TCPA class action pending forthcoming D.C. Circuit opinion as a "stay will conserve judicial resources, clarify the law, and aid the court in making a decision"); *Fontes*, 2015 WL 9272790, at *5 (stay warranted in TCPA class action

---

[3]  Charter maintains the TCPA's automated-call ban is an unconstitutional content-based restriction on speech that fails strict scrutiny.  As discussed above, this exact defense—which would result in a complete finding of no liability if decided in Charter's favor—will be addressed in *AAPC*.  This Court cannot address that defense without the risk that any decision will be overturned by the Supreme Court's decision in *AAPC*, and any interim decision rejecting the defense would prejudice Charter.

pending forthcoming D.C. Circuit opinion which may resolve a dispositive issue and could "avoid the risk of wasting the resources of the Court."). Accordingly, the third *Landis* factor also heavily favors a stay.

### d. A Stay Will Further the Public Interest and the Interests of Persons Not Parties to this Action.

Moreover, although not a *Landis* factor in this Circuit, a stay would also promote the public interest because the public has a strong interest in the efficient, fair, and uniform administration of the judicial system. A stay also would promote the interests of non-parties that could be impacted by this litigation because it will prevent discovery that would unnecessarily burden such parties, and ensure a uniform interpretation of the law. *See Nuccio v. Duve*, No. 7:13-CV-1556, 2015 WL 1189617, at *5 (N.D.N.Y. Mar. 16, 2015) ("Staying this action [pending the outcome of a district court action involving similar issues] will serve the interest of the courts, non-parties, and the public by promoting the efficient use of judicial resources and 'minimiz[ing] the possibility of conflicts between different courts'"). For example, plaintiffs routinely serve mass subpoenas on cellular carriers in putative TCPA class actions, resulting in significant costs for the subpoena recipients and discovery disputes related to the same. Charter would also likely depose putative class members to show that class certification is improper, further burdening non-parties. And Plaintiffs will likely seek records protected by the Cable Communications Policy Act of 1984 (a/k/a the "Cable Privacy Act"), given that Charter is a telecommunications company, which will require a burdensome and expensive notice process and risk invading the privacy of subscribers. *See* 47 U.S.C. § 551(c)(1)-(2). Accordingly, the public interest and the interests of non-parties also weigh in favor of a stay.

### e. Courts Routinely Grant Stays Where Supreme Court Decisions May Have an Impact on the Case.

Applying these factors, courts within the Ninth Circuit and elsewhere routinely

stay proceedings when a higher court is close to settling an important issue of law bearing on the action. *See*, *e.g.*, *Eric B. Fromer Chiropractic, Inc*, 2015 WL 6579779, at *2 (collecting cases from district courts of California, Florida, and Virginia staying TCPA cases pending *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)); *McElrath v. Uber Tech., Inc*., No. 16-cv-07241, 2017 WL 1175591, at *5-7 (N.D. Cal. Mar. 30, 2017) (staying action pending Supreme Court decision in another case that "will significantly impact the instant case"). In fact, courts often stay individual (non-class) cases where an intermediate appellate court is poised to provide ***guidance*** on an issue that would not necessarily be dispositive, such as when courts in this circuit routinely stayed TCPA cases based on the D.C. Circuit's then-forthcoming decision on the proper definition of an ATDS. *See, e.g.*, *Small v. GE Capital, Inc*., No. 15-2479, 2016 WL 4502460, at *3 (C.D. Cal. June 9, 2016) (staying case pending D.C. Circuit's decision in *ACA Int'l v. FCC*, 885 F.3d 687, 714 (D.C. Cir. 2018)); *Errington*, 2016 WL 2930696, at *4 (same); *Fontes*, 2015 WL 9272790, at *5 (same). Here, in contrast, this is a putative class action and the forthcoming decision that serves as the basis for Charter's request for a stay is a ***Supreme Court*** decision that could end this case entirely, without the need for discovery. Accordingly, if the Court does not dismiss Plaintiff's FAC, it should stay this case pending a ruling in *AAPC*.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Charter respectfully requests that the Court dismiss Plaintiff's FAC, with prejudice, as he has failed to plead any facts supporting a reasonable inference that an ATDS was used, despite two opportunities to do so. Alternatively, and only if it does not dismiss Plaintiff's FAC, the Court should stay this case until the Supreme Court decides *AAPC*.

Dated: February 6, 2020                   KABAT CHAPMAN & OZMER LLP

                                          /s/ Kristapor Vartanian
                                          _____

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kristapor Vartanian
*Attorney for Defendant Charter*
*Communications, Inc.*

**PROOF OF SERVICE**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

I am employed in Los Angeles, California; I am over the age of 18 and not a party to the within action; my business address is 333 S. Grand Avenue, Suite 2225, Los Angeles, CA 90071.

On February 6, 2020, I served the foregoing document(s) described as **DEFENDANT CHARTER COMMUNICATIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES (inclusive of proposed order)** on the interested parties to this action by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es): SEE ATTACHED LIST

☐ **(BY MAIL)** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, CA. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☒ **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

☒ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

Executed on February 6, 2020, at Los Angeles, CA.

By: /s/ Kristapor Vartanian
_____
Kristapor Vartanian

# SERVICE LIST

Aaron D. Aftergood
The Aftergood Law Firm
1880 Century Park East, Suite 200
Los Angeles, CA 90067
aaron@aftergoodesq.com

Steven L. Woodrow
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
swoodrow@woodrowpeluso.com

Patrick H. Peluso
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
ppeluso@woodrowpeluso.com

2