# Exhibit B

No. 19-631

# In the
# Supreme Court of the United States

WILLIAM P. BARR, ATTORNEY GENERAL;
FEDERAL COMMUNICATIONS COMMISSION,

*Petitioners*,

v.

AMERICAN ASSOCIATION OF POLITICAL
CONSULTANTS, INC., ET AL.,

*Respondents*.

ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

## BRIEF FOR RESPONDENTS
## IN SUPPORT OF CERTIORARI

WILLIAM E. RANEY
KELLIE MITCHELL BUBECK
COPILEVITZ, LAM &
  RANEY, P.C.
310 W. 20th Street
Suite 300
Kansas City, MO 64108
(816) 472-9000

ROMAN MARTINEZ
  *Counsel of Record*
ANDREW B. CLUBOK
SUSAN E. ENGEL
TYCE R. WALTERS
SAMIR DEGER-SEN
GREGORY B. IN DEN BERKEN
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
roman.martinez@lw.com

*Counsel for Respondents*

## QUESTION PRESENTED

The Telephone Consumer Protection Act (TCPA) imposes liability of up to $1,500 for any call or text message made or sent without prior express consent to a cell phone using an automatic telephone dialing system or an artificial or prerecorded voice. That broad prohibition on speech, however, is subject to a host of exceptions, including for calls made "to collect a debt owed to or guaranteed by the United States."

In the decision below, the Fourth Circuit recognized that the TCPA's restriction on speech is content-based and not narrowly tailored to any compelling government interest. Accordingly, the court held that the statute violates the First Amendment. But instead of invalidating the TCPA's ban on speech, the court took the extraordinary step of rewriting the statute to prohibit *more* speech. Specifically, the Fourth Circuit purported to fix the constitutional defect by severing the government-debt exception from the statute, while leaving all of the statute's unconstitutional speech restrictions intact.

The question presented is:

Whether the TCPA's automated-call prohibition is an unconstitutional content-based restriction of speech, and if so whether the Fourth Circuit erred in addressing the constitutional violation by broadening the prohibition to abridge more speech.

ii

## RULE 29.6 STATEMENT

Respondent Public Policy Polling, LLC has no parent corporation, and no publicly held company owns 10 percent or more of its stock. The remaining respondents are nonprofit organizations.

iii

## LIST OF RELATED PROCEEDINGS

Pursuant to Supreme Court Rule 14.1(b)(iii), respondents state that there are no proceedings directly related to the case in this Court.

iv

# TABLE OF CONTENTS

**Page**

QUESTION PRESENTED ......................................... i

RULE 29.6 STATEMENT.......................................... ii

LIST OF RELATED PROCEEDINGS ..................... iii

TABLE OF AUTHORITIES ..................................... v

STATEMENT OF THE CASE .................................. 3

    A.  Statutory and Regulatory Background .......... 3

    B.  Factual and Procedural Background.............. 6

ARGUMENT ........................................................... 12

    A.  The Constitutional Issue Warrants
        Review............................................................ 12

    B.  The Remedial Issue Warrants Review ......... 17

CONCLUSION....................................................... 27

v

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Arkansas Writers' Project, Inc. v. Ragland*,
  481 U.S. 221 (1987)..................................17, 20, 21

*Beckerman v. City of Tupelo*,
  664 F.2d 502 (5th Cir. Unit A. Dec.
  1981)....................................................21

*Bridgeview Health Care Center, Ltd. v.
  Clark*,
  816 F.3d 935 (7th Cir. 2016)..................................6

*Carey v. Brown*,
  447 U.S. 455 (1980)..............................................21

*City of Cincinnati v. Discovery Network,
  Inc.*,
  507 U.S. 410 (1993)..............................................21

*Dana's Railroad Supply v. Attorney
  General*,
  807 F.3d 1235 (11th Cir. 2015)...........................22

*Dimmitt v. City of Clearwater*,
  985 F.2d 1565 (11th Cir. 1993).....................21, 23

*Duguid v. Facebook, Inc.*,
  926 F.3d 1146 (9th Cir. 2019)...........10, 11, 16, 23

*First National Bank of Boston v. Bellotti*,
  435 U.S. 765 (1978)..............................................21

vi

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Free Enterprise Fund v. Public Co.*
   *Accounting Oversight Board,*
   561 U.S. 477 (2010).......................................17, 18

*Gallion v. United States,*
   772 F. App'x 604 (9th Cir. 2019) ..................11, 23

*Greater New Orleans Broadcasting*
   *Association v. United States,*
   527 U.S. 173 (1999)..............................................21

*Iancu v. Brunetti,*
   139 S. Ct. 2294 (2019).....................................2, 12

*Italian Colors Restaurant v. Becerra,*
   878 F.3d 1165 (9th Cir. 2018).............................15

*Lucia v. SEC,*
   138 S. Ct. 2044 (2018).........................................24

*Marks v. Crunch San Diego,*
   904 F.3d 1041 (9th Cir. 2018), *cert.*
   *dismissed,* 139 S. Ct. 1289 (2019) ......................10

*Matthews v. Town of Needham,*
   764 F.2d 58 (1st Cir. 1985) .................................21

*McCullen v. Coakley,*
   573 U.S. 464 (2014)..............................................13

*Metromedia, Inc. v. City of San Diego,*
   453 U.S. 490 (1981)..............................................15

vii

## TABLE OF AUTHORITIES—Continued

Page(s)

*Minneapolis Star & Tribune Co. v.*
   *Minnesota Commissioner of Revenue,*
   460 U.S. 575 (1983)..............................................21

*Morse v. Frederick,*
   551 U.S. 393 (2007)................................................6

*Police Department of Chicago v. Mosley,*
   408 U.S. 92 (1972)................................................21

*Rappa v. New Castle County,*
   18 F.3d 1043 (3d Cir. 1994) ....................21, 22, 24

*Reed v. Town of Gilbert,*
   135 S. Ct. 2218 (2015)..................................*passim*

*Republican Party of Minnesota v. White,*
   536 U.S. 765 (2002)..............................................15

*Shamblin v. Obama for America,*
   No. 8:13-cv-2428-T-33TBM, 2015 WL
   1754628 (M.D. Fla. Apr. 17, 2015) ........................6

*Sorrell v. IMS Health Inc.,*
   564 U.S. 552 (2011)..............................................21

*Thomas v. Chicago Park District,*
   534 U.S. 316 (2002)..............................................15

*Turner Broadcasting System, Inc. v. FCC,*
   512 U.S. 622 (1994)..............................................14

*Willson v. City of Bel-Nor,*
   924 F.3d 995 (8th Cir. 2019)................................21

viii

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

## ADMINISTRATIVE DECISIONS

*Cargo Airline Association Petition for
     Expedited Declaratory Ruling*, *Rules
     and Regulations Implementing the
     Telephone Consumer Protection Act of
     1991*, Order, CG Docket No. 02-278, 29
     FCC Rcd. 3432 (2014) ...........................................5

*Rules and Regulations Implementing the
     Telephone Consumer Protection Act of
     1991*, Declaratory Ruling, CG Docket
     No. 02-278, 31 FCC Rcd. 7394 (2016) ..................4

*Rules and Regulations Implementing the
     Telephone Consumer Protection Act of
     1991*, Declaratory Ruling and Order, CG
     Docket No. 02-278, WC Docket No. 07-
     135, 30 FCC Rcd. 7961 (2015) ..........................5, 6

## CONSTITUTIONAL AND STATUTORY PROVISIONS

U.S. Const. amend. I ................................................18

47 U.S.C. § 153(39)...................................................4

47 U.S.C. § 227(a)(1) .................................................3

47 U.S.C. § 227(b)(1) .................................................4

47 U.S.C. § 227(b)(1)(A) .......................................4, 16

47 U.S.C. § 227(b)(1)(A)(iii)...............................3, 9, 18

ix

## TABLE OF AUTHORITIES—Continued

**Page(s)**

47 U.S.C. § 227(b)(2)(C) ................................................4

47 U.S.C. § 227(b)(3) ...................................................5

47 U.S.C. § 227(g)(1) ...................................................5

47 U.S.C. § 227(g)(3) ...................................................5

47 U.S.C. § 227(g)(7) ...................................................5

47 U.S.C. § 608 ..........................................................19

## OTHER AUTHORITIES

Brooke Conkle et al., *Dissecting The
    Inherent Tension In Today's TCPA
    Landscape*, Law360 (Aug. 5, 2019) ......................6

Alexis Kramer, *Facebook Robocall Case
    Gives Justices Shot to Define Autodialer*,
    Bloomberg L. News (Oct. 28, 2019)....................26

Stuart L. Pardau, *Good Intentions and the
    Road to Regulatory Hell: How the TCPA
    Went from Consumer Protection Statute
    to Litigation Nightmare*, 2018 U. Ill. J.L.
    Tech. & Pol'y 313 (2018) ........................................6

S. Rep. No. 102-178 (1991), *reprinted in*
    1991 U.S.C.C.A.N. 1968 ........................................5

x

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

*WebRecon Stats for Dec 2017 & Year in Review*, WebRecon LLC, https://webrecon.com/webrecon-stats-for-dec-2017-year-in-review/ (last visited Dec. 3, 2019)...........................................................5

## BRIEF FOR RESPONDENTS

Respondents agree with the Government that certiorari should be granted. This case involves questions of far-reaching importance regarding (1) the constitutionality of a frequently litigated Act of Congress, and (2) the appropriate remedy when a content-based speech restriction violates the First Amendment. Although the Fourth Circuit correctly held that the statute at issue is unconstitutional, the court nonetheless refused to invalidate the challenged speech restriction or provide respondents any meaningful relief. Instead, the court "severed" an *exception* to the speech restriction, thereby outlawing additional speech while leaving the unconstitutional speech prohibition intact. The Fourth Circuit's constitutional holding is correct, but its severability analysis is profoundly wrong and requires this Court's urgent attention. Certiorari is warranted on both issues.

The Telephone Consumer Protection Act (TCPA) is one of the most frequently litigated statutes in the federal courts, with thousands of new cases, alleging billions of dollars in damages, filed each year. The TCPA contains a sweeping prohibition on certain types of automated calls made to cellular telephones. But that restriction is subject to multiple, content-based exceptions for speech that the government favors—including a gaping exception for calls made to collect any form of government-backed debt, and a total exemption for any automated calls made by federal, state, or local government entities.

Respondents are direct participants in the American political process who wish to use automatic-call technology to engage in political speech at the

2

core of the First Amendment.  For that reason, they challenged the TCPA's speech restrictions as unconstitutional.  The Fourth Circuit properly held that the TCPA violates the First Amendment because it discriminates among types of speech based on content and cannot satisfy strict scrutiny.  But instead of striking down the unconstitutional speech restriction, the Fourth Circuit crafted an extraordinary "remedy" by severing the government-debt exception from the statute.  So the court's solution to the First Amendment violation was to make *more* speech unlawful.

Because the decision below invalidated a federal statute, the Government rightly asserts that this Court's traditional criteria for certiorari support review of the Fourth Circuit's constitutional holding. *See, e.g., Iancu v. Brunetti*, 139 S. Ct. 2294, 2298 (2019).  That is so even though that holding is entirely correct.  As the Fourth Circuit concluded, the TCPA's automated-call ban "constitutes an unconstitutional content-based restriction on speech," is "fatally underinclusive," and thus "fails to satisfy strict scrutiny." Pet. App. 16a, 21a-22a.

But the Fourth Circuit's remedial holding is fundamentally wrong, and—as the Government recognizes—it too warrants this Court's review in this case.  Under settled principles of law, when a content-based restriction on speech violates the First Amendment, the proper remedy is to invalidate that restriction. *See, e.g.*, *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2231-32 (2015).  The Fourth Circuit's contrary decision to leave the restriction intact—but to sever and invalidate a speech-promoting *exception* to the restriction—turns constitutional law on its head.  The First Amendment does not allow courts to

3

rewrite laws to ban more speech. The Fourth Circuit's severability holding conflicts with countless decisions of this Court and various federal courts of appeals. It also entirely undermines the incentives for litigants to challenge unconstitutional content-based speech restrictions in the first place.

The Fourth Circuit's extraordinary decision to hold an act of Congress unconstitutional, but then deny the challengers any relief by rewriting the statute to ban more speech, plainly merits this Court's review in this case. And because the pending petition in *Facebook, Inc. v. Duguid*, No. 19-511 (filed Oct. 17, 2019), raises a related and independently certworthy statutory question, the Court should grant certiorari and hold oral argument in that case as well.

## STATEMENT OF THE CASE

### A. Statutory and Regulatory Background

1. The TCPA makes it "unlawful" to call a cellphone using either an "automatic telephone dialing system" (ATDS) or an "artificial or prerecorded voice," unless that call is made with the prior express consent of the recipient. 47 U.S.C. § 227(b)(1)(A)(iii). The statute defines an ATDS as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." *Id.* § 227(a)(1).

The TCPA provides multiple exceptions to its ban on speech using automated technology. Most saliently, it exempts calls "made solely to collect a debt owed to or guaranteed by the United States." *Id.* § 227(b)(1)(A)(iii). That broad category encompasses a vast array of privately issued student loans, mortgages, veterans' loans, and farm loans. Under

4

this government-debt exception, private debt collectors are allowed to make calls without consent using autodialing or prerecorded/artificial voice technology so long as the call is for the collection of a private government-backed debt or a debt owed to the government itself. So, for example, while a call using an ATDS to collect a government-backed mortgage debt or a government-backed student loan debt is permitted, an otherwise identically worded call to discuss the collection of either of those debts from a private lender, or to discuss any other topic, is prohibited.

The TCPA also explicitly exempts calls "made for emergency purposes." 47 U.S.C. § 227(b)(1)(A). And the statute implicitly exempts all calls made by governmental entities—including state and local governmental entities—by limiting its coverage to a "person*," id.* § 227(b)(1), which is defined as any "individual, partnership, association, joint-stock company, trust, or corporation," *see id.* § 153(39). The Federal Communications Commission (FCC) has interpreted this exemption to extend to government contractors. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, CG Docket No. 02-278, 31 FCC Rcd. 7394, 7395-96, 7398-99 ¶¶ 3, 10-11 (2016).

Finally, the statute provides that the FCC "may, by rule or order, exempt from" liability any "calls to a telephone number assigned to a cellular telephone service that are not charged to the called party." 47 U.S.C. § 227(b)(2)(C). Under this provision, the FCC has exempted numerous categories of calls on the basis of content. For instance, certain healthcare-related calls (such as medical appointment reminders and prescription reminders) are exempted, as are

5

package-delivery notifications and calls relating to bank transfers. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order (2015 FCC Order), CG Docket No. 02-278, WC Docket No. 07-135, 30 FCC Rcd. 7961, 8024-28, 8031-32 ¶¶ 129-38, 146-48 (2015); *Cargo Airline Association Petition for Expedited Declaratory Ruling, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Order, CG Docket No. 02-278, 29 FCC Rcd. 3432, 3436-38 ¶¶ 13-18 (2014).

The TCPA is enforceable by the FCC and state attorneys general, and it also creates a private right of action that carries substantial penalties. 47 U.S.C. § 227(b)(3), (g)(1), (g)(3), (g)(7). A violation of the statute is subject to an automatic $500 statutory penalty per call, with treble damages available "[i]f the court finds that the defendant willfully or knowingly" committed the violation. *Id.* § 227(b)(3).

2. For almost 20 years after its enactment in 1991, the TCPA lay relatively dormant. *See* S. Rep. No. 102-178, at 2 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1969. But over the last decade, litigation under the statute has exploded. Between 2009 and 2016, there was an almost 50-fold increase in the number of TCPA cases filed, from fewer than 100 in 2009 to 4,840 in 2016.[1] This "skyrocketing" docket has led the FCC's current chairman to characterize the TCPA as the "poster child for lawsuit

---

[1] *WebRecon Stats for Dec 2017 & Year in Review*, WebRecon LLC, https://webrecon.com/webrecon-stats-for-dec-2017-year-in-review/ (last visited Dec. 3, 2019).

6

abuse." 2015 FCC Order, 30 FCC Rcd. at 8073 (Pai, Comm'r, dissenting).

Statutory damages of up to $1,500 per individual call have made the TCPA "a national cash cow for plaintiff's attorneys." *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 941 (7th Cir. 2016) (citation omitted).   One recent class action, for instance, resulted in a jury award of $925 million.  *See* Brooke Conkle et al., *Dissecting The Inherent Tension In Today's TCPA Landscape*, Law360 (Aug. 5, 2019). And TCPA actions regularly settle for tens of millions of dollars.  *See* Stuart L. Pardau, *Good Intentions and the Road to Regulatory Hell: How the TCPA Went from Consumer Protection Statute to Litigation Nightmare*, 2018 U. Ill. J.L. Tech. & Pol'y 313, 322 (2018) (citing statistics).

TCPA suits have not only targeted for-profit businesses.  They have also sought to penalize the dissemination of information from a wide array of nonprofits, religious organizations, and political entities as well.   Indeed, American political campaigns are now routinely sued in TCPA class actions.  *See, e.g.*, *Shamblin v. Obama for Am.*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1754628, at *1 (M.D. Fla. Apr. 17, 2015); *Thorne v. Donald J. Trump for President, Inc.*, No. 1:16-cv-4603 (N.D. Ill. filed Apr. 25, 2016).  The TCPA thus directly targets non-government speech of virtually every type, including "[p]olitical speech" that is "'at the core of what the First Amendment is designed to protect.'"  *Morse v. Frederick*, 551 U.S. 393, 403 (2007) (citation omitted).

## B. Factual and Procedural Background

1. Respondents are a collection of entities whose core function is to participate in the American

7

political process, including by disseminating political speech in connection with federal, state, and local elections.

Respondent American Association of Political Consultants, Inc. (AAPC) is a bipartisan trade association of political and public affairs professionals, including consultants, fundraisers, and pollsters. AAPC's members make calls to solicit candidate donations, conduct polls on political and governmental issues, and organize "get out the vote" efforts. C.A.J.A. 158.[2] Respondent Democratic Party of Oregon works to coordinate, organize, and elect political candidates by making calls to registered voters, offering voters information to help with the voting process, and encouraging voters to return their ballots and vote for Democratic candidates. *Id.* at 142 ¶ 9. Respondent Washington State Democratic Central Committee likewise works to elect Democrats to office—in part by making calls to registered voters to advise on issues and to solicit political donations. *Id.* at 143-44 ¶ 12. And Respondent Public Policy Polling tracks public opinion on behalf of politicians, political organizations, unions, and others. *Id.* at 143 ¶ 10.

Respondents believe that their political activities would be aided by using automated technology to reach a greater number of citizens in a more cost-effective manner. *Id.* at 159 ¶ 11, 162 ¶ 8, 174 ¶ 8. But they recognize that many of their activities could run afoul of Section 227(b)(1)(A)(iii) and risk $1,500

---

[2]   "C.A.J.A." refers to Joint Appendix, No. 18-1588 (4th Cir. filed July 3, 2018).

8

in statutory damages for every single call or text message made or sent.

2.  In 2016, respondents initiated this declaratory judgment action against the Attorney General and the FCC.  They asserted that the TCPA's content-based ban on protected speech violates the First Amendment, and they sought declaratory relief as well as an injunction restraining the Government from enforcing the speech ban against them.  *See, e.g.*, C.A.J.A. 141 ¶ 7, 148-54 ¶¶ 36-663, 238-39, 243, 248, 250-51.  In explaining why the restriction is unconstitutional, respondents pointed to the various exceptions—including the government-debt exception—directly undermining the Government's claim that the automated-call ban advances a compelling interest.  *See, e.g.*, *id.* at 141, 149, 152-54, 238-39, 243, 266, 289-96, 379-84.

The district court concluded that the TCPA's prohibition on speech is content-based and thus subject to strict scrutiny.  Pet. App. 33a-35a.  But it then held that the statute survives strict scrutiny, because in its view the restriction is narrowly tailored to the government's interest in residential privacy.  *Id.* at 35a-38a.  The court further held that the "TCPA's government-debt exception is a narrow exception to further a compelling interest" in collecting government-backed debts.  *Id.* at 37a.  The court therefore granted summary judgment to the Government.  *Id.* at 42a.

3.  On appeal, the Fourth Circuit agreed with the district court and respondents that the TCPA's automated-caller provision employs content-based distinctions and thus triggers strict scrutiny.  Pet. App. 12a.  In doing so, the court applied this Court's recent decision in *Reed*, which reaffirmed that a

9

statutory restriction on speech is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 11a (quoting 135 S. Ct. at 2227). The court explained that Section 227(b)(1)(A)(iii) "facially distinguishes between phone calls on the basis of their content." *Id.* at 12a. Specifically, whereas calls made to cell phones "'solely to collect a debt owed to or guaranteed by the United States' do *not* violate the automated call ban," calls "that deal with other subjects—such as efforts to collect a debt neither owed to nor guaranteed by the United States—. . . *are* prohibited by the automated call ban." *Id.* (emphasis added) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)).

The court next concluded that the provision "fails strict scrutiny review," *id.* at 16a, because "the debt-collection exemption does not further the purpose of the automated call ban in a narrowly tailored fashion," *id.* at 17a. It noted that the exception's "expansive reach" "subverts the privacy protections underlying the ban" insofar as it "authoriz[es] many of the intrusive calls that the automated call ban was enacted to prohibit." *Id.* at 16a, 18a; *see id.* at 16a (describing speech restriction as "fatally underinclusive").[3]

The Fourth Circuit then turned to the question of remedy. Strangely, the court based its analysis on the

---

3 The Fourth Circuit declined to address respondents' argument that the other statutory and regulatory exemptions likewise establish that the automated-call provision is content-based and unconstitutional, even though respondents had properly raised those exemptions throughout the case. Pet. App. 10a n.7; *see also* C.A.J.A. 290-92 (Resps. Mot. Summ. J.); C.A.J.A. 381-82, 388 (Resps. Reply in Supp. Summ. J.).

10

erroneous premise that it was the government-debt *exception*, and not the underlying speech *prohibition*, that violates the First Amendment—even though (1) the exception itself does not abridge any speech, and (2) respondents had clearly challenged the restriction, not the exception. Pet. App. 3a; *see supra* at 8; Resps. C.A. Br. 8; Resps. C.A. Reply Br. 2-4. The court then found that the government-debt exception is severable from the rest of the TCPA, including the speech-abridging prohibition that respondents have actually challenged. Pet. App. 21a-24a. The Fourth Circuit thus purported to remedy the First Amendment violation by *expanding* the TCPA's speech restriction to abridge speech that Congress purposely freed from regulation. *Id.* at 23a-24a.

The Government and respondents each sought rehearing en banc, challenging the constitutional and remedial holdings, respectively. Both petitions were denied on June 21, 2019. *Id.* at 49a.

4. While this case was pending in the Fourth Circuit, the Ninth Circuit addressed the scope of the TCPA's automated-call ban in *Marks v. Crunch San Diego*, 904 F.3d 1041 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1289 (2019). *Marks* adopted an expansive interpretation of the TCPA's definition of ATDS, holding that it encompasses any device "with the capacity to dial stored numbers automatically." *Id.* at 1052. That definition is broad enough to include virtually all of the 265 million smartphones now in use in the United States.

A few months later—and shortly after the Fourth Circuit's decision in this case—the Ninth Circuit rejected various First Amendment challenges to the TCPA's constitutionality in *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). The court began by

11

doubling-down on *Marks*'s expansive interpretation of the ATDS provision and rejecting Facebook's argument that this interpretation rendered the statute unconstitutionally overbroad. *Id.* at 1151-52. The Ninth Circuit then accepted Facebook's alternative constitutional argument—which tracks the one respondents advanced here—that the statute is content-based and fails strict scrutiny. *Id.* at 1153-56. Just like the Fourth Circuit in this case, however, the court severed the speech-permitting exception from the remainder of the statute. *Id.* at 1156-57. The Ninth Circuit therefore left intact the speech-abridging prohibition that Facebook actually challenged, and that failed strict scrutiny. *Id.*

Two weeks after its decision in *Duguid*, the Ninth Circuit issued an opinion in *Gallion v. United States*, 772 F. App'x 604 (9th Cir. 2019), again recognizing that the content-based distinctions embodied in the TCPA were unconstitutional, and again choosing to sever the government-debt exception rather than invalidate the statute's prohibition on speech. *Id.* (applying *Duguid*).

On October 17, 2019, Facebook filed a petition for certiorari in this Court asserting that (1) the *Marks*/*Duguid* interpretation of the ATDS provision is erroneous, and (2) the automated-call ban is an unconstitutional content-based restriction on speech. Pet. 12-34, *Facebook, Inc. v. Duguid*, No. 19-511. On November 1, 2019, Charter Communications filed its own petition for certiorari advancing the constitutional argument. *Charter Commc'ns, Inc. v. Gallion*, No. 19-575. And on November 14, 2019, the Solicitor General filed the petition in this case.

12

## ARGUMENT

The Government is right that this Court should review the Fourth Circuit's decision in this case, including both its constitutional and remedial holdings. The Fourth Circuit's ruling that the TCPA's automated-call restriction violates the First Amendment is correct, but certiorari is nonetheless appropriate under this Court's usual practice of reviewing any decision holding a federal statute unconstitutional. The Fourth Circuit's severability ruling is both wrong and independently certworthy. That ruling violates this Court's precedent, conflicts with decisions of other courts of appeals, and undermines core First Amendment principles. Additionally, because the *Facebook* case raises a related and independently certworthy statutory question, this Court should grant review there as well.

## A. The Constitutional Issue Warrants Review

The Government's petition asks this Court to review the Fourth Circuit's holding that the TCPA's automated-call restriction is facially unconstitutional, thereby requiring severance of the government-debt exception. Pet. 6-17. Respondents agree that certiorari is warranted.

1. This Court's "usual" practice is to grant certiorari "when a lower court has invalidated a federal statute." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2298 (2019). No reason exists to depart from that practice here. The constitutional question in this case is exceptionally important to the Government, to respondents, and indeed to all potential TCPA defendants around the country. As the petition notes

13

(at 13), the government-debt exception is frequently utilized and enables private debt collectors to help the Government collect millions of dollars annually. More generally, the TCPA is one of the most frequently litigated statutes in the federal courts, with thousands of cases—alleging billions of dollars in damages—filed each year. *See supra* at 5-6. Potential TCPA defendants have the right to know whether the prohibitions on their speech are constitutionally invalid. There is plainly an important need for a uniform federal rule on this question. This Court should resolve the First Amendment issue in this case.

2. Although the Government is right about certiorari, the Fourth Circuit's holding that the TCPA's automated-call provision violates the First Amendment is correct. If certiorari is granted, this Court should affirm that holding on the merits.

The automated-call prohibition is a content-based restriction on speech because (1) it "draws distinctions based on the message a speaker conveys," and (2) whether its prohibitions apply to any given automated call "depend[s] entirely on the communicative content of the [call]." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015); *see also McCullen v. Coakley*, 573 U.S. 464, 479 (2014); Pet. App. 12a-14a. As the Fourth Circuit explained, the application of the TCPA's speech restriction depends on whether the call in question is made to collect government-backed debt. Pet. App. 12a-13a. If so, the call is permitted. If not, the call is prohibited. Either way, whether the statute applies turns on the *content* of the call. By design, the TCPA favors speech

14

relating to collection of government-backed debt while banning otherwise identical speech.[4]

Content-based speech restrictions like the one at issue here trigger strict scrutiny and are "presumptively unconstitutional"; they are justified "only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2226. Here, the Fourth Circuit rightly concluded that the automated-call ban does not serve compelling interests. The statutory exception for calls made to collect government-backed debts creates a gaping hole in the regulatory framework that completely undermines the Government's asserted interest in protecting personal privacy. *See* Pet. App. 17a (noting that exception "runs counter to the privacy interests" that TCPA ostensibly serves). More than 41 million borrowers owe over one trillion dollars in federal student loans alone (not to speak of the many other types of government-backed loans available), and the government-debt exception authorizes intrusive debt-collection calls to each of those individuals. *Id.* at 17a-18a. Indeed, the Government itself affirmatively endorses such calls,

---

4   Other features of the TCPA likewise confirm that the automated-call provision is content-based and triggers strict scrutiny. For example, the broad exemption for *any* call or text message sent by any federal, state, or local government entity (and their agents) impermissibly favors government speech—advancing government interests—over other speech by ordinary citizens. *See, e.g.*, *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994) ("[S]peaker-based laws demand strict scrutiny when they reflect the Government's preference for the substance of what the favored speakers have to say (or aversion to what the disfavored speakers have to say.").

15

asserting that the exception could "save the federal government $120 million over ten years." Pet. 13.

The TCPA's other exemptions likewise undermine any claim that the automated-call ban advances a compelling interest. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 520 (1981). For instance, as the Government emphasizes, "the federal government and its agencies" are not subject to the TCPA's speech ban. Pet. 12. Government officials and contractors are thus allowed to make a broad range of automatic calls, from conducting research surveys to scheduling congressional town halls. The wholesale exemption for all government speakers and messages "undermine[s]" the statute's "ameliorative effect" and shows that the privacy "justification" is "thin.*" Italian Colors Restaurant v. Becerra*, 878 F.3d 1165, 1177-78 (9th Cir. 2018); *see also Thomas v. Chicago Park Dist.*, 534 U.S. 316, 325 (2002) ("Granting waivers to favored speakers (or, more precisely, denying them to disfavored speakers) would of course be unconstitutional . . . ."). The same goes for the statute's other exemptions—as well as its open-ended delegation to the FCC to create still more. *See supra* at 4-5.

This Court has explained that when a speech restriction "leaves appreciable damage to [a] supposedly vital interest unprohibited," it "cannot be regarded as protecting an interest of the highest order." *Reed*, 135 S. Ct. at 2232 (quoting *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002)). That is the case here. The Fourth Circuit thus correctly held that the automated-call provision is unconstitutional.

3. The Government raises a series of arguments challenging the Fourth Circuit's constitutional

16

holding. *See* Pet. 6-14. Respondents will address those arguments in full on the merits, if and when certiorari is granted. But three quick points bear noting at this stage.

First, the government's core argument—that the automated-call restriction is "content-neutral" because it is triggered by the call's "economic purpose" (Pet. 6-11)—is inconsistent with this Court's decision in *Reed*. There, the Court made clear that one way a statute can be "content-based" is when it "defin[es] regulated speech by its . . . purpose." 135 S. Ct. at 2227. That is what the TCPA does here, where the only way to determine whether the automated-call prohibition applies is to consider the content of the call—asking whether the call was "made for emergency purposes," "to collect a debt owed to or guaranteed by the United States," or for any of the other permissible content-based reasons. 47 U.S.C. § 227(b)(1)(A).

Second, the government's attempt to avoid classifying the automated-call restriction as content-based has been soundly rejected by the Fourth and Ninth Circuits—the only federal courts of appeals to have addressed that issue. *See* Pet. App. 11a-22a; *Duguid*, 926 F.3d at 1153-56.

And third, the Government does not even *try* to challenge the Fourth Circuit's conclusion that the automated-call ban fails strict scrutiny. In this Court, the Government's only assertion is that strict scrutiny does not apply in the first place, because the TCPA's speech restriction is not content-based. *See* Pet. 6-14. The Government's unwillingness to defend the strict-scrutiny arguments it raised below is telling, and further confirms that the Fourth Circuit's

17

constitutional analysis should be affirmed on the merits.

## B.  The Remedial Issue Warrants Review

The Government's petition also asks this Court to review the Fourth Circuit's remedial holding, which left the TCPA's speech restriction in place—even though it flunked strict scrutiny—and instead severed the government-debt exception.  Pet. 14-15. Respondents agree that this Court should review the remedial question.  This Court's standard practice is to address the remedial consequences whenever it concludes that a federal statute is unconstitutional. *See, e.g.*, *Reed*, 135 S. Ct. at 2231-33; *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508-10 (2010); *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 233-34 (1987).  And here, the remedial issue is independently certworthy, as the Fourth Circuit's analysis contradicts decades of this Court's precedent, creates a circuit split with multiple courts of appeals, and undermines core First Amendment and separation-of-powers principles.

1. It is black-letter law that when a statutory provision violates the Constitution, it must be invalidated.  *See, e.g.*, *Free Enter.*, 561 U.S. at 508. The severability doctrine addresses whether other portions of a statute—which are perfectly constitutional on their own—must nonetheless also be invalidated because of their relationship to the unconstitutional provision.   As this Court has explained: "'Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem,' severing any 'problematic portions while leaving the remainder intact.'"   *Id.* (citation omitted).

18

Here, respondents challenged the TCPA's *restriction* on automated calls, 47 U.S.C. § 227(b)(1)(A)(iii).  *See supra* at 8, 10; *see also* C.A.J.A. 141 ¶ 2 (specifically identifying Section 227(b)(1)(A)(iii) as the "cell phone call ban" being challenged in this action).  That restriction is the "problematic portion[]" of the statute that violates the First Amendment's prohibition on "abridging" speech.  *Free Enter.*, 561 U.S. at 508 (citation omitted); U.S. Const. amend. I.  The restriction must therefore be set aside.

The Fourth Circuit concluded otherwise by mischaracterizing this case as a challenge to the government-debt *exception*, instead of to the automated-call *restriction*.  Pet. App. 2a, 3a, 6a, 9a, 10a.  But that makes no sense.  The First Amendment prohibits restrictions on speech—not exemptions from those restrictions that permit speech.  The government-debt exception does not limit speech in any way.  Moreover, that exception has no direct bearing on respondents whatsoever:  Respondents are not government-debt collectors; they care only about alleviating the TCPA's abridgement of their own speech; and they did not challenge the exception.  As respondents have repeatedly explained, the exception's role in this case is to help to establish that the restriction *itself* is content-based and unconstitutional.  *See supra* at 8; Resps. C.A. Br. 12-17.

Because the Fourth Circuit mischaracterized the basis of respondents' constitutional challenge, it went on to misapply this Court's severability doctrine.  Believing that the *exception* was unconstitutional, it severed that exception but left the underlying restriction intact.  Pet. App. 22a-24a.

19

That was error.  The government-debt exception does not restrict speech; it *protects* speech—and therefore does not violate the First Amendment.  The Fourth Circuit's ruling rewrites the statute in a way that makes *more* speech unlawful than Congress ever intended.  That perverse result violates separation-of-powers principles and turns the First Amendment upside down.[5]

Instead of expanding the TCPA's prohibition of speech, the Fourth Circuit should have invalidated and severed Section 227(b)(1)(A)(iii), leaving the TCPA's other provisions—regulating other types of communications—intact.  That approach would have implemented this Court's settled severability doctrine while also heeding the Communications Act's "Separability" provision, which directs that if any part of the TCPA "is held invalid, the remainder of the [statute] . . . shall not be affected thereby."  47 U.S.C. § 608.

2. The Fourth Circuit's severability analysis squarely conflicts with this Court's consistent rulings in analogous First Amendment cases.  When concluding that the exceptions to a speech restriction show that the restriction is unconstitutional, this

---

5   The Fourth Circuit's analysis also creates a significant due process problem, insofar as it threatens retroactive liability for any government-backed-debt collector who made unconsented communications before the Fourth Circuit invalidated and severed the automated-call provision. Penalizing such debt collectors for engaging in speech expressly protected by statute violates principles of fair notice.  But exempting them (and *only* them) from liability resurrects the content-based distinction that the court's misguided severability analysis sought to eliminate.

20

Court has consistently—and correctly—invalidated the restriction.

The most recent example is *Reed*, where this Court addressed a township "Sign Code" with a basic structure similar to the TCPA. The statute contained a blanket "prohibit[ion]" on "the display of outdoor signs anywhere within the Town," but narrowed the prohibition with a series of "exemptions" based on "whether a sign convey[ed]" a "particular message." *Reed*, 135 S. Ct. at 2224, 2227, 2231. As this Court explained, the "Sign Code [was] content based" because the existence of the various exemptions meant the prohibition on the display of outdoor "sign[s] . . . depend[ed] entirely on the communicative content of the sign." *Id.* at 2227. The Court subjected the statute to strict scrutiny and held that the exceptions showed that the speech restriction was "hopelessly underinclusive" and thus unsupported by any compelling interest. *Id*. at 2231. Most importantly, after concluding that the statute was unconstitutional, the *Reed* Court—unlike the Fourth Circuit here—held the Sign Code's *restrictions* on speech to be unconstitutional. The Court nowhere suggested that the First Amendment problem could be cured by simply severing the code's exemptions and increasing the scope of the town's restriction on speech. *Cf.* Pet. App. 22a-24a.

Another example is *Arkansas Writers' Project*, where this Court considered a sales tax on magazines, which contained an exemption for "religious, professional, trade, or sports periodical[s]." 481 U.S. at 226 (citation omitted). The Court concluded that the state had "advanced no compelling justification" for this content-based taxation scheme. *Id.* at 234. But rather than strike down the exemption for certain

21

types of magazines, the Court held that the "selective" taxation rendered "the *tax* . . . invalid under the First Amendment." *Id.* (emphasis added).

*Reed* and *Arkansas Writers' Project* align with decades of this Court's First Amendment precedent, which invariably recognize that the correct remedy for a broad content-based restriction on speech that fails strict scrutiny is to strike down the offending restriction, not its exceptions. *See, e.g.*, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-66 (2011); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 190 (1999); *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 430-31 (1993); *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 592-93 (1983); *Carey v. Brown*, 447 U.S. 455, 471 (1980); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 795 (1978); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 102 (1972). The Fourth Circuit's ruling departs from that settled law without justification.

3. The Fourth Circuit's severability analysis also sharply conflicts with decisions of other courts of appeals, which faithfully apply this Court's precedent to strike down restrictions—not exceptions—that unconstitutionally abridge speech based on content. *See, e.g.*, *Willson v. City of Bel-Nor*, 924 F.3d 995, 1000, 1004 (8th Cir. 2019); *Rappa v. New Castle Cty.*, 18 F.3d 1043, 1072-74 (3d Cir. 1994) (Becker, J., joined by Alito, J.); *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1572 (11th Cir. 1993); *Matthews v. Town of Needham*, 764 F.2d 58, 61 (1st Cir. 1985) (Rosenn, Breyer, and Torruella, JJ.); *Beckerman v. City of Tupelo*, 664 F.2d 502, 513 (5th Cir. Unit A. Dec. 1981). In such cases, courts have recognized that the exceptions "betray[] the frailty of any potential state interests" and thus render the underlying restriction

22

unconstitutional. *Dana's R.R. Supply v. Att'y Gen.*, 807 F.3d 1235, 1250 (11th Cir. 2015).

The clearest conflict is with the Third Circuit's decision in *Rappa*. There, the Third Circuit addressed a Delaware ordinance prohibiting most signs near state highways but exempting "signs advertising local industries, meetings, buildings, historical markers and attractions." 18 F.3d at 1047. After holding that the statute was an unconstitutional content-based speech restriction, the court considered whether the exceptions could be severed in light of an express severability clause—which stated that "[i]f any provision of the Code . . . is held invalid, such invalidity shall not affect the provisions or application of this Code . . . that can be given effect without the invalid provisions or application." *Id.* at 1072 (citation omitted).

Although the Third Circuit recognized that "the rest of the statute could surely function independently" if the exceptions were severed, it nonetheless concluded that severance would be inappropriate. *Id.* at 1072-73. The court explained that the "severability inquiry here has a constitutional dimension," because eliminating the exception "would . . . restrict *more* speech than [the law] currently does." *Id.* The court concluded "that the proper remedy for content discrimination generally *cannot* be to sever the statute so that it restricts more speech than it did before—at least absent quite specific evidence of a legislative preference for elimination of the exception." *Id.* at 1073 (emphasis added).

The Fourth Circuit's ruling is also in sharp tension with the Eleventh Circuit's decision in *Dimmitt*. There, the court considered a municipal sign code that

23

exempted flags, so long as those flags "represent[ed] a governmental unit or body." *Dimmitt*, 985 F.2d at 1568 (citation omitted). The court first held that this content-based distinction failed strict scrutiny. *Id.* at 1572. It went on to conclude that the district court had erred in invalidating only "the *exemption* for a limited number of flags"—a remedy that would "leave[] [the challenger] in a worse position than if the City had prevailed." *Id.* (emphasis added). The Eleventh Circuit explained that the district court's error stemmed from treating the exemption "as if this section itself prohibited" speech. *Id.* Instead, the court reasoned, the broad prohibition "must also be declared unconstitutional." *Id.* That is the exact opposite of what the Fourth Circuit did here.

To be sure, the Fourth Circuit's severability analysis has now been adopted by the Ninth Circuit in *Duguid v. Facebook, Inc.,* 926 F.3d 1146 (9th Cir. 2019), and *Gallion v. United States*, 772 F. App'x 604 (9th Cir. 2019). Like the Fourth Circuit, the Ninth Circuit held the TCPA to be impermissibly content-based and thus unconstitutional. *Duguid*, 926 F.3d at 1152-56; *Gallion*, 772 F. App'x at 605-06. And also like this case, the Ninth Circuit's remedy was to expand the TCPA's speech ban by severing the government-debt-collection exception, because, in the court's view, "[e]xcising the debt-collection exception preserves the fundamental purpose of the TCPA and leaves" a "content-neutral TCPA." *Duguid*, 926 F.3d at 1157; *see also Gallion*, 772 F. App'x at 606.

But as Facebook and Charter point out in their respective petitions for certiorari, the Ninth Circuit's severability rulings reflect the same core error at the heart of the Fourth Circuit's ruling here. Both courts mistakenly treated the challenge as being to the

24

government-debt exception, instead of to Section
227(b)(1)(A)(iii)'s underlying restriction.   And both
courts purported to fix a First Amendment violation
by abridging more speech.   *See Facebook* Pet. 16-21;
*Facebook* Pet. Reply 3, 5-6; *Gallion* Pet. 9-21.

4.   Finally, the Fourth Circuit's severability ruling
creates significant practical problems.   Severing a
speech-promoting exception (and leaving the
restriction intact) means "individuals would lose
much of their incentives to challenge
[unconstitutional] statutes."   *Rappa*, 18 F.3d at 1073.
After all, parties burdened by a speech restriction
would have no reason to challenge it if the sole
"remedy" were to impose the same burden on others.
That result contradicts the bedrock principle that
courts must employ remedies that "create
'[]incentive[s] to raise [constitutional] challenges.'"
*Lucia v. SEC*, 138 S. Ct. 2044, 2055 n.5 (2018) (first
two alterations in original) (citation omitted).   The
overall impact of the Fourth Circuit's misguided
approach is to insulate unconstitutional statutes from
judicial review.

The Government admits—and actually
embraces—this result.   In this case, *Duguid*, and
*Gallion*, the Government repeatedly urged the lower
courts *not* to address the constitutional question
precisely because respondents could not obtain relief
under its (erroneous) severability analysis.   *See*
C.A.J.A. 58-60; United States Petition for Panel
Rehearing and Rehearing En Banc 7, *Duguid v.
Facebook, Inc.*, No. 17-15320 (9th Cir. filed July 29,
2019), ECF No. 82-1; United States Petition for Panel
Rehearing and Rehearing En Banc 6-9, *Gallion v.
Charter Commc'ns, Inc.*, No. 18-55667 (9th Cir. filed
Aug. 22, 2019), ECF No. 61; *see also* Pet. 15.   As the

25

Government well knows, the inevitable result of applying severability principles in this way is to allow unconstitutional statutes to stay on the books—and to continue chilling valued speech at the heart of the First Amendment. This Court should not countenance that result.

\*      \*      \*

For the reasons noted above, respondents fully support granting the Government's petition, encompassing both the constitutionality and remedial issues. Nonetheless, the Court may wish to reframe the question presented to more accurately capture the core constitutional question at the heart of this case. As explained above, the issue is not "[w]hether the government-debt *exception* to the TCPA's automated-call restriction violates the First Amendment," (Pet. I (emphasis added)) but rather whether the *restriction* is unconstitutional. *See supra* at 8, 10, 18-19. If the Court wishes to reformulate the question, it could ask the parties to address "Whether the TCPA's automated-call prohibition is an unconstitutional content-based restriction of speech, and if so whether the Fourth Circuit erred in addressing the constitutional violation by broadening the prohibitions to abridge more speech." *See supra* at i.

In addition to granting certiorari in this case, the Court should also grant review in *Facebook*, because that case raises a related statutory question about the breadth of the TCPA's automated-caller provision—specifically, the proper interpretation of the statutory definition of ATDS. *Supra* at 10-11. Respondents agree with Facebook that the Ninth Circuit's statutory holding exacerbates the constitutional flaws of the statute and is clearly wrong and at odds with decisions by the Third and D.C. Circuits. *Facebook*

26

Pet. 23-34; *Facebook* Pet. Reply 6-9. Indeed, the statutory issue is frequently litigated and has generated a remarkable 38-28 split among district courts across the country. Alexis Kramer, *Facebook Robocall Case Gives Justices Shot to Define Autodialer*, Bloomberg L. News (Oct. 28, 2019). Respondents also agree with Facebook that in determining whether the automated-call prohibition satisfies strict scrutiny, it would be helpful to know precisely what that prohibition covers. *See Facebook* Pet. Reply 6-8.

Given the TCPA's overarching importance—and its broad chilling effect on speech—this Court should take this opportunity to review all major outstanding constitutional and statutory questions about the meaning and validity of the TCPA's automated-call ban. It should grant Facebook's petition alongside the Government's petition here, and hear oral argument in both cases.

27

## CONCLUSION

The petition for a writ of certiorari should be granted.

Respectfully submitted,

WILLIAM E. RANEY
KELLIE MITCHELL BUBECK
 COPILEVITZ, LAM &
  RANEY, P.C.
310 W. 20th Street
Suite 300
Kansas City, MO 64108
(816) 472-9000

ROMAN MARTINEZ
 *Counsel of Record*
ANDREW B. CLUBOK
SUSAN E. ENGEL
TYCE R. WALTERS
SAMIR DEGER-SEN
GREGORY B. IN DEN BERKEN
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
roman.martinez@lw.com

*Counsel for Respondents*

December 4, 2019