Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
Kristapor Vartanian (SBN 275378)
kvartanian@kcozlaw.com
**KABAT CHAPMAN & OZMER LLP**
333 S. Grand Avenue, Suite 2225
Los Angeles, CA 90071
Telephone: (213) 493-3980
Facsimile: (404) 400-7333

*Counsel for Defendant Charter Communications, Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD NAKAI, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC, d/b/a SPECTRUM,<br><br>　　　　Defendant. | Case No: 2:19-cv-08035-GW-SS<br><br>**DECLARATION OF KRISTAPOR VARTANIAN IN SUPPORT OF DEFENDANT CHARTER COMMUNICATION, INC.'s MOTION FOR SANCTIONS**<br><br>Date:　April 16, 2020<br>Time:　8:30 a.m.<br>Ctrm:　9D (9th Floor)<br>　　　　350 West 1st Street<br>　　　　Los Angeles, CA 90012<br><br>Hon. George H. Wu<br><br>Am. Compl. Filed: Jan. 23, 2020<br><br>Trial Date:  No Trial Date Set |

I, KRISTAPOR VARTANIAN, declare as follows:

1. I am an associate at the law firm of Kabat Chapman & Ozmer LLP and am counsel of record for Defendant Charter Communications, Inc. ("Charter") in the above-captioned matter. I have personal knowledge of the matters set forth herein. If called and sworn as a witness, I could and would competently testify thereto.

2. I make this declaration in support of Defendant's Notice of Motion and Motion for Sanctions Against Plaintiff and/or His Counsel under FRCP 11 and 28 U.S.C. § 1927 and Memorandum of Points and Authorities in Support ("Sanctions Motion").

3. On September 17, 2019, Plaintiff filed his initial Class Action Complaint alleging that Charter called him using an "avatar" pre-recorded message from a "voice-activated" representative named "Michelle," in violation of the Telephone Consumer Protection Act ("TCPA"). D.E. 1 ¶¶ 22-23. Further, Plaintiff alleged that he received, but did not answer, other calls from Charter before and after the pre-recorded message call. *Id.* ¶¶ 20-21, 25. Plaintiff also alleged Charter used an automatic telephone dialing system to place these calls. *Id.* ¶ 40.

4. On January 17, 2020, I sent to Plaintiff's counsel, Steven L. Woodrow, Patrick Peluso, and Aaron D. Aftergood, a letter on behalf of Charter demanding that Plaintiff dismiss the Class Action Complaint. Attached as **Exhibit A** is a true and correct copy of Charter's dismissal letter.

5. In support of its demand, Charter attached declarations from Tony Ridenour and Thomas L. Cardella on behalf of the vendors who made the calls—Communications Solutions, LLC and Thomas L. Cardella & Associates, respectively—stating that the vendors' call systems did not have the ability to play any prerecorded voice messages and were not automatic telephone dialing systems. Attached as **Exhibits B** and **C** are true and correct copies of Tony Ridenour's and Thomas L. Cardella's declarations that were enclosed with Charter's dismissal letter.

6. Charter also enclosed a call recording of the alleged pre-recorded message

call showing that Plaintiff spoke with a live representative named "Michelle" on the call. Enclosed as **Exhibit D** to the concurrently filed Notice of Filing or Lodging is a true and correct copy of the call recording that was enclosed in Charter's dismissal letter.

7. On January 23, 2020, Plaintiff filed a First Amended Complaint, alleging that he received a telephone call from a live representative named "Michelle," as well as a few additional calls he did not answer. *See* D.E. 22 ¶¶ 22-23. Plaintiff still maintained that Charter "utilized an automatic telephone dialing system" to make the purported calls—allegedly violating the TCPA's automated-call restriction, 47 U.S.C. § 227(b)(1)(A)(iii). *Id*. ¶¶ 17, 39-40.

8. On February 5, 2020, I emailed Plaintiff's counsel and asked for his good-faith basis for continuing the lawsuit. I also asked that Plaintiff's counsel respond by close of business on February 7, 2020. He did not respond, which forced Charter to prepare and serve the instant motion for sanctions. Attached as **Exhibit E** is a true and correct copy of my email to opposing counsel, to which he did not respond.

9. On February 6, 2020, Charter moved to dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). D.E. 27.

10. Charter served Plaintiff with Defendant's Sanctions Motion on February 13, 2020, waiting beyond twenty-one days before filing it.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 19, 2020, in Los Angeles, California.

/s/ Kristapor Vartanian

KRISTAPOR VARTANIAN
*Attorney for Defendant Charter Communications, Inc.*

# EXHIBIT A

KRISTAPOR VARTANIAN
DIRECT DIAL: (213) 493-3981
EMAIL: kvartanian@kcozlaw.com

January 17, 2020

**VIA ELECTRONIC MAIL**

Steven L. Woodrow
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
swoodrow@woodrowpeluso.com

> Re:   *Richard Nakai v. Charter Communications, Inc.*, No. 2:19-cv-08035 (C.D. Cal.)
>        **Request for Voluntary Dismissal**

Steven,

As you know, we represent Charter Communications, Inc. ("Charter") in this matter. The purpose of this letter is to: (1) provide the results of our factual investigation, which establishes that Plaintiff has no viable claims against Charter and no good-faith basis to proceed, as a matter of law; and (2) to request that Plaintiff voluntarily dismiss the action.

In his Complaint, Plaintiff claims that: (a) he received calls to his cellular number (the "Subject Number") from Charter, including on July 15, 2019; and (b) those calls were placed with an "avatar" pre-recorded message ("PRV") from a "voice-activated" representative named "Michelle." (D.E. 1 ¶¶ 22–23.) Based on these allegations, Plaintiff proposes a purported class of persons who Charter called "using the same pre-recorded voice technology." (D.E. 1 ¶ 30.) However, the evidence shows Plaintiff's allegations to be plainly false. To start, the call recording of the July 15 call, which is enclosed for your reference, confirms that no PRV of any kind was used. Rather, the recording conclusively establishes that a live individual named "Michelle" spoke with Plaintiff (and that Plaintiff actually requested a call back—a fact which he omits from the Complaint while at the same time complaining about subsequent calls on July 16 and 20). To be clear, no call was ever placed to Plaintiff (or others) with a system that played any PRV. Charter's vendors—Thomas L. Cardella & Associates and Communications Solutions—made the calls you reference in your Complaint, and I have attached sworn statements from both vendors attesting to these facts.

And to the extent Plaintiff attempts to claim that Charter used an "automatic telephone dialing system" ("ATDS") to contact him (*see* D.E. 1 ¶ 17), those allegations fare no better. Indeed, the systems that were used do not constitute ATDSs under any definition, including the controlling definition in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018). Specifically, the systems require a live agent to manually initiate each call, one by one. This means that the systems lack the capacity to dial multiple numbers at the same time. The systems are also

Steven L. Woodrow
January 17, 2020
Page 2

incapable of predictive or automatic dialing. Further still, the systems were (and are) not able to store and automatically dial from a list without human intervention. The attached sworn statements attest to all of this.

As you know, such systems are not ATDSs under *Marks*, as a matter of law, and *Marks* is binding authority in this action. 904 F.3d at 1052 (holding an ATDS must be able to "dial such numbers automatically"); *see Ammons v. Diversified Adjustment Serv. Inc.*, No. 2:18-CV-06489, 2019 WL 5064840, at *5 (C.D. Cal. Oct. 9, 2019) (applying *Marks* and holding click-to-dial system is not considered an ATDS under *Marks*, as such a system "goes far beyond merely triggering a system to run automatically. It requires human interaction to initiate each call."). In fact, these manual-dial systems could not be considered ATDSs under ***any*** definition of the term, and TCPA claims based on calls made with such systems are routinely dismissed, even in other Circuits.[1]

We understand you did not have all of this information when you filed the lawsuit. However, you now have enough information such that there is no good-faith basis to proceed. We therefore respectfully request that Plaintiff voluntarily dismiss this lawsuit by no later than January 24, 2020, such that our client does not have to incur any further expenses associated with this matter. We are happy to discuss further over a call.[2]

---

[1] *See, e.g.*, *Collins v. Nat'l Student Loan Program*, 360 F. Supp. 3d 268, 273 (D.N.J. 2018) ("every court to examine this issue has held that the clicker agent's role prevents the system from qualifying as an ATDS under the [TCPA].") (collecting cases); *Fleming v. Associated Credit Servs., Inc.*, 342 F. Supp. 3d 563, 578 (D.N.J. 2018); *Marshall v. CBE Grp., Inc.*, No. 2:16-cv-02406, 2018 WL 1567852, at *7 (D. Nev. Mar. 30, 2018); *Pozo v. Stellar Recovery Collection Agency, Inc.*, No. 8:15-cv-929, 2016 WL 7851415, *3 (M.D. Fla. 2016); *Hatuey v. IC Sys., Inc.*, Case No. 1:16-cv-12542, 2018 WL 5982020, at *7 (D. Mass. Nov. 14, 2018); *Arora v. Transworld Sys. Inc.*, Case No. 15-cv-4941, 2017 WL 3620742, at *3 (N.D. Ill. Aug. 23, 2017); *Schlusselberg v. Receivables Performance Mgmt., LLC*, No. CV 15-7572, 2017 WL 2812884, at *3 (D.N.J. June 29, 2017); *Smith v. Stellar Recovery, Inc.*, No. 15-cv-117172017, WL 1336075, at *5 (E.D. Mich. Feb. 7, 2017), *report and recommendation adopted*, 2017 WL 955128 (E.D. Mich. Mar. 13, 2017).

[2] Setting aside the lack of merit to Plaintiff's claims, Plaintiff's action cannot proceed for at least two reasons. First, the action cannot proceed, particularly with your firm as class counsel—and is instead subject to transfer, stay or outright dismissal—in light of the first-to-file rule. That is, there is another putative TCPA class action against Charter in the Central District of California, which was filed long before this case and contains a class definition that fully engulfs the proposed putative class in this matter. *See Gallion v. Charter Communications Inc.*, et al., No. 5:17-cv-01361 (C.D. Cal. filed July 6, 2017). Second, and on a related note, the U.S. Supreme Court just granted *certiorari* to review the constitutionality of the TCPA. *See Barr v. American Ass'n. of Political Consultants, Inc., et al.*, 923 F.3d 159 (4th Cir. 2019), *cert. granted*, No. 19-631, 2020 WL 113070 (Jan. 10, 2020) ("*AAPC*"). Charter has a similar petition for *certiorari* pending in *Gallion*, which will likely be held by the Supreme Court pending resolution of *AAPC*. Hence, to the extent Plaintiff refuses to voluntarily dismiss his claims, we intend to: (i) mark this case related to *Gallion*, resulting in a transfer of this case to Judge Snyder; and (ii) then file the appropriate motion to dismiss or stay this case under the first-to-file rule and pending the U.S. Supreme Court's review of the TCPA's constitutionality. As to the latter point, since *Gallion* is already stayed and will no doubt remain stayed pending resolution of *AAPC*, Judge Snyder will also stay this action.

Steven L. Woodrow
January 17, 2020
Page 3

                                              Sincerely,

                                              Kris Vartanian

Enclosures

cc (*via email*): Ryan D. Watstein (rwatstein@kcozlaw.com)
               Matthew Keilson (mkeilson@kcozlw.com)
               Patrick Peluso (ppeluso@woodrowpeluso.com)
               Aaron D. Aftergood (aaron@aftergoodesq.com)

# EXHIBIT B

## DECLARATION OF TONY RIDENOUR

I, Tony Ridenour, declare under penalty of perjury that the following is true and correct:

1. My name is Tony Ridenour. I am over the age of 18 and am competent to make this declaration. I am a Vice President of Communications Solutions, LLC ("ComSol"). In that capacity, I perform various job duties that support the operations of ComSol.

2. The information contained herein is based on my personal knowledge along with my review of the business records generated and maintained by ComSol. These business records include reports and records of acts, events, and transactions, made and maintained in the ordinary course of business at or near the time of the act, event, or transaction by (or from information transmitted by) someone with knowledge.

3. If called and sworn as a witness, I could and would competently testify as to the contents of this Declaration.

4. ComSol makes calls to consumers about Charter services in certain circumstances.

5. ComSol's business records show that it called the phone number 562-370-6756 (the "6756 Number") about Charter's services, though it never reached anyone.

6. None of the calls referenced in paragraph 5 were placed automatically or with a system that plays pre-recorded voice messages. Nor did the system with which these calls were made (the "System") employ any sort of "avatar" recordings or artificial intelligence. Rather, each of these calls was individually initiated by the separate and distinct physical act of our human agent at the point of dialing and all interaction on those calls was between that live human agent and the call recipient, if one was reached.

7. To provide further background, every call placed with the System ComSol used to place these calls requires a live agent to manually initiate each call, one by one. The System lacks the capacity to dial multiple numbers at the same time and is incapable of storing numbers and

1

dialing them automatically from a list. In fact, the System would need to be remade in order to possess such capabilities.

8. The System's functionalities described herein describe not only how the System operates today, but how it has always operated, including how the calls described in Paragraph 5 were placed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 10, 2020 in Springfield, MO

_____
TONY RIDENOUR

# EXHIBIT C

## DECLARATION OF THOMAS L. CARDELLA

I, Thomas L. Cardella, declare under penalty of perjury that the following is true and correct:

1. My name is Thomas L. Cardella. I am over the age of 18 and am competent to make this declaration.

2. I am the President at Thomas L. Cardella & Associates ("TLC"). In that capacity, I perform various job duties that support the operations of TLC.

3. The information contained herein is based on my personal knowledge along with my review of the business records generated and maintained by TLC. These business records include reports and records of acts, events, and transactions, made and maintained in the ordinary course of business at or near the time of the act, event, or transaction by (or from information transmitted by) someone with knowledge.

4. If called and sworn as a witness, I could and would competently testify as to the contents of this Declaration.

5. In certain circumstances, TLC makes calls to consumers about Charter services.

6. TLC's business records show that it called the phone number 562-370-6756 (the "6756 Number") about Charter's services on several occasions, including on July 15, 2019.

7. None of these calls were placed automatically or with a system that plays pre-recorded voice messages. Nor did the system with which these calls were made (the "System") employ any sort of "avatar" recordings or artificial intelligence. Instead, each of these calls was individually initiated by the separate and distinct physical act of our human agent at the point of dialing and all interaction on those calls was between that live human agent and the call recipient.

8. By way of additional detail, every call placed with the System TLC used to place these calls requires a live agent to manually initiate each call, one by one. The System lacks the capacity to dial multiple numbers at the same time and is incapable of storing numbers and dialing

1

them automatically from a list. In fact, the System would need to be remade in order to possess such capabilities.

9. The System's functionalities described herein describe not only how the System operates today, but how it has always operated, including how the calls described in Paragraph 6 were placed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 14, 2020 in Cedar Rapids, Iowa.

*[signature]*

THOMAS L. CARDELLA

# Exhibit D

Enclosed with Notice of Manual Filing or Lodging

# EXHIBIT E

**From:** Kris Vartanian <kvartanian@kcozlaw.com>
**Sent:** Wednesday, February 5, 2020 10:18 AM
**To:** Patrick Peluso <ppeluso@woodrowpeluso.com>
**Cc:** Ryan D. Watstein <rwatstein@kcozlaw.com>
**Subject:** Nakai v. Charter Communications, Inc., Case No. 2:19-cv-08035

Patrick,

We wanted to circle back on Plaintiff's allegations in the first amended complaint ("FAC"). Can you please articulate why you believe Charter "made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*?" FAC ¶ 39; *see also id*. ¶ 17.

It is clear that your client provided you with false information for the initial Complaint, claiming that he received calls placed with an "avatar" pre-recorded message ("PRV") from a "voice-activated" representative named "Michelle." Compl. ¶¶ 22-23. In reality, Plaintiff spoke with a live individual named "Michelle," and actually requested a call back. We provided you with the recording evidencing this conversation with Plaintiff, as well as declarations from Charter's vendors establishing that no call was ever placed to Plaintiff (or anyone else) with a system that played any PRV.

We then discussed with you that Plaintiff appeared to have fabricated the entire basis for his Complaint, and noted that he lacked a good-faith basis to proceed. Instead of dismissing the Complaint, Plaintiff turned around and filed the FAC, admitting there was no recorded message and stating that he was called with an ATDS only.

What is your good-faith factual basis for filing and pursuing the FAC, claiming Charter used an ATDS? There are no such facts at all in the FAC. And all of the evidence, including the declarations and call recording we provided you, establish the opposite.

In light of the upcoming Rule 16 conference and other deadlines quickly approaching, please get back to us by no later than COB on February 7.

Thanks,

Kris

**Kristapor Vartanian**
KABAT CHAPMAN & OZMER LLP
333 S. Grand Avenue
Suite 2225
Los Angeles, California 90071
Direct: (213) 493-3981
Email: kvartanian@kcozlaw.com
www.kcozlaw.com

The information in this message is intended for the addressee only and may contain privileged and confidential information.  If you are not the intended recipient, please notify the sender immediately and permanently delete it from your system.  Any unauthorized reading, distribution, dissemination, copying, use of or reliance on the information in this message is strictly prohibited.