**THE AFTERGOOD LAW FIRM**
Aaron D. Aftergood (239853)
aaron@aftergoodesq.com
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

**WOODROW & PELUSO, LLC**
Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Pro Hac Vice*

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **RICHARD NAKAI**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**CHARTER COMMUNICATIONS, INC.**, d/b/a SPECTRUM, a Delaware corporation,<br><br>Defendant. | Case No. 2:19-cv-08035-GW-SS<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS**<br><br>Date: April 16, 2020<br>Time: 8:30 a.m.<br>Judge: Hon. George H. Wu<br>Place: Courtroom 9D<br><br>Amended Complaint Filed: January 23, 2020 |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In addition to its previously-filed motion to dismiss or stay this matter, Defendant Charter Communications, Inc. ("Defendant" or "Charter") and its counsel now move for Rule 11 sanctions on grounds that are themselves potentially sanctionable.[1] Charter asserts that Plaintiff Richard Nakai ("Plaintiff" or "Nakai") should be sanctioned because, supposedly, Plaintiff has "no good-faith basis" to bring his claims in light of a call recording and declarations provided by Charter about its dialing systems. (Def. Mot., Dkt. 35, at 2.) In effect, Charter is asking the Court to sanction Nakai's unwillingness to drop his claims and simply take Defendant's word that its dialing systems do not make autodialed calls, without any discovery. Such a result would dangerously undermine the ability of consumers to bring any lawsuit of this kind.

On the contrary, Plaintiff has acted in good faith by amending his complaint to comport with the evidence that Charter has provided. A review of the call recording, which was previously unavailable to Nakai, dispelled his prior belief that the calls featured a pre-recorded avatar, and he thus amended his complaint. However, and as asserted in the original complaint, Plaintiff maintains his good-faith belief that the calls were placed using an automated telephone dialing system ("ATDS"). Two identical, self-serving declarations from Charter's vendors are not

---

[1]   *See* Advisory Comm. Notes, 1983 Amendment to Rule 11 ("the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions*"); Fansteel, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, Lodge No. 1777*, 708 F. Supp. 891, 900 (N.D. Ill. 1989) *aff'd,* 900 F.2d 1005 (7th Cir. 1990) (admonishing defendants "brief" and "ill-considered Rule 11 motion" as "symptomatic of the infectious sanctions-seeking disease that threatens to reach epidemic proportions in the legal profession"); *See MetLife Bank, N.A. v. Badostain*, No. 1:10-CV-118-CWD, 2010 WL 5559693 (D. Idaho Dec. 30, 2010) (awarding sanctions for frivolous sanctions motion).

sufficient to prove that the calls weren't autodialed—what constitutes an ATDS requires significant legal and factual analysis.

Nakai's refusal to voluntarily dismiss his claim without any discovery is neither a reflection of bad faith, nor is it sanctionable conduct. Accordingly, and as explained below, the Court should deny Defendant's Motion for Sanctions.

## II.   FACTUAL BACKGROUND

On September 17, 2019, Plaintiff filed the initial Complaint in this action, alleging that Charter violated the TCPA by making unsolicited telemarketing calls through the use of an ATDS and/or an artificial or prerecorded voice. (*See* Compl., dkt. 1, at ¶ 1.) Without discovery, Nakai could not know the precise nature of the equipment used by Charter to call him, but he supported his claims with factual allegations to suggest the calls he received were automated, including the number of calls received, the lack of any business relationship with Charter, and the nature of the calls—soliciting purchase of Charter's cable TV and internet products and services through what he believed to be an automated "avatar" message system. (*Id.* ¶¶ 20–26.) Plaintiff consistently alleged that the calls were made using an ATDS. (*See, e.g.*, *id.* ¶¶ 13–14, 17, 40, 41.)

After the Complaint was filed, Charter responded by sending a letter to Plaintiff and his counsel requesting that Nakai dismiss his claims. (*See* Dkt. 35-1, at 5–7.) To support its demand, Defendant included: (1) a recording of the call with "Michelle" as alleged in the Complaint, and (2) two declarations signed by its vendors, Thomas L. Cardella & Associates and Communications Solutions. (*Id.* at 5.) The declarations averred broadly, and in nearly identical language, that the respective systems of each vendor supposedly do not fit the definition of an ATDS. (*Id.* at 8–13.)

Upon review, the call recording indicated to Plaintiff and his counsel that what Nakai believed to be a prerecorded "avatar" was instead a live representative, and accordingly Plaintiff filed the First Amended Complaint to reflect this new evidence and his improved understanding of the calls. (*See* First Am. Compl., dkt. 22 at ¶¶ 22–23.) On the other hand, Charter's vendor declarations were not sufficient to dispel the belief that the calls were automated, and Plaintiff maintains his remaining allegations that the calls were autodialed and therefore made in violation of the TCPA. (*See, e.g.*, *id.* ¶¶ 3–4, 13–14, 17, 25–27, 39–40.)

## III.   ARGUMENT

Defendant's contentions that Plaintiff has acted in bad faith by continuing to pursue his claims or amending his complaint to reflect new evidence are simply unfounded. Charter's motion is riddled with inflammatory language, including suggesting without any basis that Plaintiff's prior belief that the calls were made using a pre-recorded voice was "fabrication," "deception," and "outright falsity." (Dkt. 35, at 2, 5.) Provocative accusations aside, Plaintiff has at all times supported his claims with allegations made in good faith—his willingness to amend and conform his claims to new evidence is demonstrative of good faith, and it reflects the nature of fact-finding and litigation generally.

Likewise, Charter's assertion that Plaintiff's ATDS claims are "foreclosed," either by law or by Defendant's vendor declarations, holds no weight. (*See id.* at 2, 5, 10–11.) The question of a dialer's ATDS capabilities is a fact-intensive inquiry that cannot be resolved by conclusory declarations. In reality, Charter's arguments against Nakai's ATDS claims are not based on sanctionable conduct, but only on Defendant's adamant (and misguided) belief that its declarations are enough to defeat the claims. Plaintiff has a good faith basis for continuing to litigate his claims.

Accordingly, Nakai's claims are neither frivolous nor brought in bad faith, as Charter contends. Plaintiff continues to pursue his claims in good faith, and the Court should deny Defendant's motion for sanctions.

### A. Nakai Amended His Complaint And Continues To Pursue His Claims In Good Faith.

By promptly filing a complaint with allegations based on information and belief, and thereafter amending the complaint to conform to new evidence, Plaintiff Nakai has acted in good faith and has not violated Rule 11. The conduct that Charter describes as "beyond the pale" is more appropriately referred to by the courts as "litigation." (*See* Dkt. 35, at 11.) As such, Defendant's request for sanctions is without merit.

Rule 11 of the Federal Rules of Civil Procedure provides that by signing or filing a pleading, an attorney certifies that, "to the best of [their] knowledge, information, and belief, formed after a reasonable inquiry under the circumstances," the pleading is not presented for any improper purpose. FED. R. CIV. P. 11(b)(1). This certification also includes that the factual contentions have evidentiary support or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.* 11(b)(3).

The Ninth Circuit has recognized that allegations often change during the course of litigation:

> At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations, laches, the need to preserve evidence and other such concerns. In recognition of these uncertainties, we do not require complaints to be verified, and we allow pleadings in the alternative—even if the alternatives are mutually exclusive. As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> the wayside as legally or factually unsupported. This rarely means that
> those allegations were brought in bad faith or that the pleading that
> contained them was a sham. Parties usually abandon claims because,
> over the passage of time and through diligent work, they have learned
> more about the available evidence and viable legal theories, and wish
> to shape their allegations to conform to these newly discovered
> realities. We do not call this process sham pleading; *we call it
> litigation*.

*PAE Gov't Services, Inc. v. MPRI, Inc.*, 514 F.3d 856, 858–59 (9th Cir. 2007)
(citations omitted) (emphasis added); *see also Breville USA, Inc. v. Hurom L.S. Co.,
Ltd.*, No. CV 13–8324 DMG (AJWx), 2014 WL 12600145, at *4 (C.D. Cal. Apr.
28, 2014) (quoting *PAE*).

The Ninth Circuit's acknowledgement in *PAE* applies readily to this matter.
When filing the initial Complaint, Nakai had a good faith belief (and alleged "on
information and belief") that the call he received was made with not just an
autodialer but a pre-recorded "avatar" message system. (*See* Dkt. 1, at ¶ 22.)
However, after Defendant provided a recording of the call to Nakai and his counsel,
Plaintiff's assessment of the call changed, and he amended his allegations to
conform to the new evidence available to him. His allegations of a prerecorded
message fell "by the wayside as legally or factually unsupported," and the First
Amended Complaint is now limited to ATDS allegations. *See PAE*, 514 F.3d at
859. The choice to amend the Complaint to conform to new evidence does not
suggest "fabrication" or conduct "beyond the pale"—it reflects what the Ninth
Circuit calls "litigation." *Id.*

Charter has no support for its assertions that Plaintiff has deceived his
counsel or acted in bad faith, save for its view that the entire case should be
dismissed. Nakai alleged the use of a pre-recorded voice in good faith, and upon
receipt of new evidence and information that Charter recognized he did not have

when filing the initial complaint[2], he amended his pleadings to focus on the claims that he and his counsel believe are legally and factually supported. There is simply no basis for arguing bad faith or sanctionable conduct, and Defendant's motion should be denied.

**B.     The Question Of ATDS Capability Is A Fact-Intensive Inquiry, And Nakai's Claims To That Effect Are Not "Foreclosed" By Law Or Charter's Declarations.**

Charter spends much of its motion stating that Plaintiff's ATDS claims are "foreclosed" by the law, or by Defendant's vendor declarations. (Dkt. 35 at 2, 5, 6, 8, 10, 11.) This is not an argument for sanctions—it is a round-about way for Charter to express its disagreement with the claims and to push for their dismissal. Nakai's ATDS claim is not "foreclosed" by law or the declarations that Charter has shared—the ATDS analysis is fact-intensive, and it cannot be resolved by conclusory declarations. Plaintiff's choice to continue pursuing the ATDS claim, as opposed to dismissing his complaint simply because Charter's vendors claim their systems don't qualify as autodialers, is not sanctionable.

The declarations provided by Charter, made by two separate vendors who may have placed the calls in question on behalf of Defendant, are not conclusive to analyze, let alone vindicate, the dialing equipment in question. In nearly identical language, the declarants make a number of statements about the proprietary equipment they use, including that the calls were not placed automatically and that "the System would need to be remade" in order to function as an ATDS. (*Compare* Dkt. 35-1 at 9–10, *with* Dkt. 35-1 at 12–13.) Of course, without sharing any other evidence or specifics about the systems used, Charter is convinced that these self-

---

[2] (Dkt. 35-1, at 6) ("We understand you did not have all of this information when you filed the lawsuit.").

serving declarations will defeat Nakai's ATDS claim. But the notion that Plaintiff should be sanctioned unless he accepts these representations at face value and dismisses his complaint—without any opportunity to test the declarations in discovery—is absurd.

In TCPA cases where plaintiffs allege the use of an autodialer, the Court has found that "it is unreasonable to expect [plaintiffs] to know or plead with a high level of precision the technology" responsible for allegedly automated texts or calls. *Armstrong v. Investor's Business Daily, Inc.*, No. CV 18-2134-MWF (JPRx), 2018 WL 6787049, at *9 (C.D. Cal. Dec. 21, 2018). Prior to discovery on the equipment, which is in the sole possession of defendants, "courts cannot expect more." *Maier v. J.C. Penney Corp., Inc.*, No. 13cv0163-IEG (DHB), 2013 WL 3006415, at *3 (S.D. Cal. June 13, 2013). Here, while Plaintiff no longer contends that the call was pre-recorded, he has still alleged facts suggestive of an autodialer: receipt of multiple calls, solicitation of goods and services, and no prior relationship between himself and Charter. (Dkt. 22, at ¶¶ 20–25.)

Further, the question of what constitutes an ATDS is a "highly fact-specific inquiry," particularly in regards to what level of human intervention is involved. *Abante Rooter and Plumbing, Inc. v. Nationwide Mut. Ins. Co.*, No. 17-cv-03328-EMC, 2018 WL 573576, at *2, n. 2 (N.D. Cal. Jan. 26, 2018). As a result, the issue is better addressed with a "more developed factual record," and after the plaintiff has "an opportunity to test the declaration[s] through discovery or deposition." *Id.* Thus, the mere representation by Charter's vendors that the calls made through their system were "initiated" by live agents is not enough. (Dkt. 35-1, at 9, 12.) With more specifics about the system capabilities (which will be sought in discovery), or if Charter had cited to court opinions that had found these specific systems did not qualify as an ATDS, Plaintiff accepts that the strength of his claims could change.

But the ATDS analysis is a "case-by-case determination," as the technology used by telemarketers, and corresponding legal analysis, evolves.[3] *Abante*, 2018 WL 573576, at \*2, n. 2 (quoting *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7975 (2015)).

In any event, to the extent Charter is using its motion for sanctions as a means to challenge the sufficiency of Nakai's claims, it is doing so improperly. "Rule 11 motions should not be employed 'to test the legal sufficiency or efficacy of allegations in the pleadings . . . [n]or should [they] be prepared to emphasize the merits of a party's position . . . [or] to intimidate an adversary into withdrawing contentions that are fairly debatable.'" *Canon Solutions Am., Inc. v. Gungap*, No. SACV 14-1990-JLS (RNBx), 2015 WL 13388254, at \*7 (C.D. Cal. Sept. 9, 2015) (quoting Committee Notes on Amendments to Fed. R. Civ. P., 146 F.R.D. 401, 590 (1993)); *Masimo Corp. v. Mindray DS USA, Inc.*, No. SACV 12-02206-CJC(JPRx), 2013 WL 12138718, at \*2 (C.D. Cal. Dec. 4, 2013) (same). Other motions are available for those purposes—a motion for sanctions is not the correct vehicle. *Foley v. Aintabi*, No. CV 13-3691 DSF (SSx), 2014 WL 12589635, at \*3 (C.D. Cal. Feb. 3, 2014).

Defendant's contention that Plaintiff should be sanctioned for refusing to dismiss his ATDS claims in the face of two untested declarations is not at all grounded in Rule 11. Considering that the dialers are in the sole custody and control of Charter or its vendors, these are precisely the kind of allegations that will likely have evidentiary support after reasonable discovery. *See* Fed. R. Civ. P. 11(b)(3).

---

[3] The ATDS definition itself is currently the subject of FCC comment and review. *See* Consumer and Governmental Affairs Bureau Seeks Further Comment on Interpretation of the Telephone Consumer Protection Act in Light of the Ninth Circuit's Marks v. Church San Diego, LLC Decision, Docket No. 02-278 (Oct. 3, 2018).

Plaintiff's continued pursuit of his ATDS claim is in good faith, and Defendant's motion for sanctions should be denied.

## IV.    CONCLUSION

The Court should deny Charter's motion for sanctions. Nakai has amended his complaint in good faith to conform to the evidence provided by Charter, and he has a legal and factual basis for maintaining his ATDS claims. Plaintiff's refusal to dismiss his entire case in response to conclusory declarations is not sanctionable conduct. Accordingly, the Court should deny Defendant's motion and award any such relief as it deems necessary and just.

Respectfully Submitted,

**RICHARD NAKAI**, individually and on behalf of all others similarly situated,

Dated: March 26, 2020         By:  ___/s/ Patrick H. Peluso___
                                           One of Plaintiff's Attorneys

**THE AFTERGOOD LAW FIRM**
Aaron D. Aftergood (239853)
aaron@aftergoodesq.com
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

**WOODROW & PELUSO, LLC**
Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676

Facsimile: (303) 927-0809
*Pro Hac Vice*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on March 26, 2020.

/s/ Patrick H. Peluso