UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8035-GW-SSx | | Date | April 15, 2020 |
|---|---|---|---|---|
| Title | *Richard Nakai v. Charter Communications, Inc.* | | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:**     **IN CHAMBERS - RULING ON DEFENDANT CHARTER COMMUNICATIONS, INC.'S MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY PROCEEDINGS [27]; and DEFENDANT'S MOTION FOR SANCTIONS AGAINST PLAINTIFF AND/OR HIS COUNSEL UNDER FRCP 11 AND 28 U.S.C. § 1927 [35]**


The Court finds that the present motions can be ruled upon without the need for oral argument. See C.D. Cal. L.R. 7-15. Thus, the April 16, 2020 hearing date is taken off-calendar.

The Court GRANTS Charter's motion to dismiss with leave to amend one more time; GRANTS Charter's motion to stay the proceedings through the end of June; and DENIES Charter's motion for sanctions against Plaintiff and his counsel. The Court sets a status conference with the parties on July 6, 2020 at 8:30 a.m.; a joint report is due by July 2.


|  | : |
|---|---|
| Initials of Preparer | JG |

*__Richard Nakai v. Charter Communications, Inc.__*; Case No. 2:19-cv-08035-GW-(ASx)
Ruling on: (1) Motion to Dismiss or Alternatively Stay , and (2) Motion for Sanctions

## I.      Background[1]

Plaintiff Richard Nakai ("Plaintiff") brings this putative class action against Charter Communications, Inc. ("Charter"), alleging violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 *et seq*. *See generally* Amended Complaint.  Before the Court are Charter's motion to dismiss Plaintiff's Amended Complaint for failure to state a claim or alternatively to stay the action pending the United States Supreme Court's decision in a case from this term, as well as Charter's motion for sanctions against Plaintiff and his counsel.

### A.  The Parties

Charter is a Delaware corporation with its principal place of business located in Stamford, CT.  Amended Complaint ¶ 8.  Charter is a telecommunications company that, through its trade name Spectrum, provides internet, cable television, and phone services to consumers and businesses.  *Id.* ¶ 12.  Charter claims to have more than 28 million consumer and business customers, and that it offers services to customers in 41 states, including California.  *Id.* Plaintiff is an adult citizen of California and resides in the state.  He allegedly received several phone calls from Charter that are at issue in this matter.

### B.  Plaintiff's Claims

In the Amended Complaint, Plaintiff alleges that on July 9, 2019, he received a call to his cell phone from the number 844-207-1543 (the "Repeat Number").  *Id.* ¶ 20.  He did not recognize the number and so did not answer the call.  The next day, Plaintiff received another call from the Repeat Number.  "The call lasted approximately 11 seconds."  *Id.* ¶ 21.  Four days later on July 15, 2019, Plaintiff received a third call from the Repeat Number.  Plaintiff answered the call and spoke with a Charter representative named Michelle.  *Id.* ¶ 22.  Michelle promoted Charter's internet and cable television services.  Because Plaintiff had to return to work, he asked Michelle to follow up by email, or to provide him with a direct phone number so that he could

---

[1] For the purpose of resolving the motion to dismiss, the Court assumes all facts pled in Plaintiff's First Amended Class Action Complaint ("Amended Complaint") (Docket No. 22) to be true, drawing all reasonable inferences in favor of Plaintiff.  *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002).

The following abbreviations are used for the parties' filings: (1) Nakai's Class Action Complaint ("Original Complaint") (Docket No. 1); (2) Charter's Motion to Dismiss or Alternatively Stay Proceedings ("MTD") (Docket No. 27); (3) Nakai's Opposition to Charter's MTD ("Opp. to MTD") (Docket No. 31); (4) Charter's Motion for Sanctions ("MFS") (Docket No. 35); (5) Charter's Reply in Support of MFS ("MFS Reply") (Docket No. 38).

call her back.  Michelle told him she could not send him an email or provide a direct number, but provided him with another Charter phone number for him to call.  *Id.* ¶ 23.  Later, on July 16, 2019 and July 20, 2019, Plaintiff received calls from the Repeat Number again.  Prior to these five calls, Plaintiff did not have a relationship with Charter.  *Id.* ¶ 25.

Plaintiff alleges that these calls were made using an automatic telephone dialing system and without his express consent, and that Charter therefore violated 47 U.S.C. § 227(b)(1)(A)(iii).  *Id.* ¶ 40.  He now seeks to bring this putative class action on behalf of:[2]

> All persons in the United States who (1) [Charter], or a third person acting on behalf of [Charter], called; (2) on the person's cellular telephone; (3) for the purpose of selling [Charter]'s products and services; (4) using an ATDS; and (4) for whom [Charter] claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

*Id.* ¶ 29.

### C.  Procedural History

Plaintiff filed a class action complaint on September 17, 2019 – the Original Complaint ("OC").  The Original Complaint differs from the operative Amended Complaint in its factual allegations.  It alleged that the July 15, 2019 call with Michelle was not, as alleged in the Amended Complaint, with a live representative.  Instead, it claims that the call was an "avatar" call, meaning that Plaintiff was presented with a series of pre-recorded audio messages.  OC ¶¶ 22-23.  Plaintiff filed the Amended Complaint on January 23, 2020.  Charter moved to dismiss the complaint or alternatively to stay the proceedings on February 6, 2020.  It also filed a motion for sanctions against Plaintiff and his counsel, arguing that they lacked a good-faith basis to proceed with the litigation when they filed the Amended Complaint.  MFS at 1.

## II.   Legal Framework

### A.  Rule 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In deciding a 12(b)(6) motion, a court "may generally consider only allegations contained

---

[2] Plaintiff provides some limited exceptions to this definition.  For example, Charter's current or former employees, officers, and directors are not included.  *See* Amended Complaint ¶ 30.

in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations.  *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002).  The court is not required to accept as true legal conclusions couched as factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Where a plaintiff facing a 12(b)(6) motion has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied.  *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013).  But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] . . . the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (citations omitted).

B. TCPA

By the beginning of the 1990s, "use of the telephone to market goods and services" had become "pervasive."  TCPA, Pub. L. No. 102-243, § 2(1), 105 Stat. 2394.  A growing number of telemarketers were using equipment to make automated or pre-recorded calls.  However, many Americans who received these automated or pre-recorded calls found them "to be a nuisance and an invasion of privacy," "regardless of the content or the initiator of the message."  § 2(10), 105 Stat. 2394.  In response,  Congress enacted the TCPA in 1991, which put in place various restrictions on the use of "automatic telephone dialing system[s]" ("ATDS").  An ATDS is defined as "equipment which has the capacity − (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  At issue here is a restriction that generally prohibits "any person within the United States" from "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. 227(b)(1)(A)(iii).  That prohibition is referred to here as the automated-call restriction.

C. Rule 11

"Rule 11 is 'aimed at curbing abuses of the judicial system.'"  *Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 542 (1991) (quoting *Cooter & Gell v. Hartmarx*

*Corp.*, 496 U.S. 384, 397 (1990)).  Rule 11 provides that by filing a pleading or other paper, "an attorney . . . certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the paper complies with Rule 11's requirements. Fed. R. Civ. P. 11(b).  Such requirements include that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law," Fed. R. Civ. P. 11(b)(2), and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," Fed. R. Civ. P. 11(b)(3).  *See Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005).

Sanctions may be imposed under Rule 11 when a pleading "is frivolous, legally unreasonable, or without factual foundation." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir. 1986) (abrogated on other grounds in *Cooter*, 496 U.S. 384 (1990));  *see Security Farms v. Int'l Bhd. of Teamsters, iChauffeurs, Warehousemen & Helpers,* 124 F.3d 999, 1016 (9th Cir. 1997).  There is no requirement of bad faith.  *See Zaldivar*, 780 F.2d at 831.  The Ninth Circuit has held that "Rule 11 sanctions should be applied if a competent attorney, after reasonable inquiry, would not have a good faith belief in the merit of a legal argument." *Amwest Mortg. Corp. v. Grady*, 925 F.2d 1162, 1164 (9th Cir. 1991).

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution" and "reserve [d] . . . for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose."  *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344-45 (9th Cir. 1988).

D.  Discretionary Stay

District courts have "broad discretion to stay proceedings as an incident to [their] power to control [their] own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  In determining whether to grant a discretionary stay, courts in this Circuit consider three factors: (1) harm the non-moving party may suffer as a result of the stay; (2) hardship the moving party may suffer if a stay is denied; and (3) "the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected from a stay" (*i.e.*, judicial economy).  *See*, *e.g.*, *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005); *Duran v. Ocwen Mortg. Servicing, Inc.*, No. 17-cv-00905-GW-(KKx), 2017 WL 10526138, at *2 (C.D. Cal. Aug. 21, 2017) (citing *CMAX, Inc. v.*

*Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

### III.     Discussion

A.  The TCPA's Automated-Call Restriction and Definition of ATDS

The Amended Complaint alleges that Charter's calls to Plaintiff's cell phone violated the

TCPA's automated-call restriction.  That restriction provides that:

> It shall be unlawful for any person within the United States, or any person outside
> the United States if the recipient is within the United States—
> (A) to make any call (other than a call made for emergency purposes or made
> with the prior express consent of the called party) using any automatic telephone
> dialing system *or* an artificial or prerecorded voice −
> . . .
> (iii) to any telephone number assigned to a paging service, cellular telephone
> service, specialized mobile radio service, or other radio common carrier service,
> or any service for which the called party is charged for the call . . . .

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  Where, as here, no argument is made that the

"emergency purposes" exception applies or that an artificial or prerecorded voice was used,[3]

"[t]he three elements of [a] TCPA claim are: (1) the defendant called a cellular telephone

number; (2) using an automatic telephone dialing system; (3) without the recipient's prior

express consent."  *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir.

2012) (citing 47 U.S.C. § 227(b)(1)).

Charter argues that Plaintiff has not adequately pled the second element that an ATDS

was used.  MTD at 3-5.  Since the TCPA's enactment, the statutory definition of an ATDS has

remained the same.  However, in recent years various courts' interpretations of that statutory

definition have fluctuated.  *See, e.g., Marks v. Crunch San Diego*, LLC, 904 F.3d 1041, 1045-49

(9th Cir. 2018).  In 2018, the United States Court of Appeals for the District of Columbia Circuit

found the FCC's guidance on the definition of an ATDS to be contradictory and unreasonably

expansive, and "vacated the FCC's interpretation of what sort of device qualifie[s] as an ATDS."

*Id.* at 1049 (discussing *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018)).  The Ninth Circuit, in

*Marks*, construed the *ACA* decision as "wip[ing] the definitional slate clean."  *Id.* at 1053.

---

[3] As noted earlier, Plaintiff alleged in the Original Complaint that his July 15, 2019 call with Michelle was
an "avatar" call, in he "was greeted with a voice-activated prerecorded message system" and "was presented with
different audio recordings of an individual as he responded to and asked questions."  OC ¶¶ 22-23.  This would have
implicated the automated-call restriction's prohibition on using "an artificial or prerecorded voice."  47 U.S.C. §
227(b)(1)(A).  However, in the operative Amended Complaint, Plaintiff now alleges that this phone call was with a
Charter representative – he does not allege the use of any pre-recorded audio messages.  Amended Complaint ¶¶ 22-
23.

Starting from this clean slate, the Ninth Circuit read the statutory definition of ATDS to refer to "equipment which has the capacity − (1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator − and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Id.*

Courts in the Ninth Circuit have considered various factors (none of which have been found dispositive) in assessing the plausibility of an allegation that an ATDS was used to make phone calls – an analysis that does not appear to have been affected by the *Marks* decision.  For example, courts have considered:

- The commercial nature of the call.  *Vaccaro v. CVS Pharmacy, Inc.*, 2013 WL 3776927, at *2 (S.D.Cal. July 16, 2013) (ATDS-use inferred based on number of calls, an artificial or prerecorded voice, and the commercial nature of calls)).

- The relationship between the parties.  *See Mogadam v. Fast Eviction Service*, No. SACV 14-01912-JVS-(RNBx), 2015 WL 1534450, at *3 (C.D. Cal. Mar. 30 2015).  If the parties had a pre-existing relationship, that would suggest that an ATDS was not used.

- The number of calls.  *See Schley v. One Planet Ops. Inc.*, No. 20-cv-00203-EMC, 2020 WL 1288470, at *4-5 (N.D. Cal. Mar. 18, 2020) (finding that an allegation that plaintiff received about 30 phone calls in the span of just a few months, together with other allegations, was sufficient to plead the use of an ATDS).

- Whether there was a "telltale pause."  *See O'Connor v. Lyft, Inc.*, No. 16-cv-00351-JSW, 2016 WL 6126966, at *4-5 (N.D. Cal. Apr. 14, 2016) (observing that "an allegation of a 'telltale pause' between the time the plaintiff answered a call and the time an agent began speaking has been sufficient to support an inference that calls were made using an ATDS").

Charter argues an analysis and weighing of all these relevant factors does not support a plausible inference that it used an ATDC in calling Plaintiff.

B.  The FAC's Allegations Concerning the ATDS

Plaintiff argues that he has pled facts concerning the first three factors that support the inference that Charter used an ATDS.  During his July 15, 2019 call, he alleges that the Charter representative tried to sell him Charter's internet and cable television services.  Amended Complaint ¶ 22.  Furthermore, he alleged that he had no pre-existing relationship with Charter, *id.* ¶ 25, and that he received five calls from the Repeat Number over a period of just twelve

days. *Id.* ¶¶ 20-24.

The Court agrees with Plaintiff that the first two factors clearly cut in his favor – but that is the case in virtually every TCPA case that the Court has reviewed.  The allegation of five calls within twelve days, however, is complicated by the fact that Plaintiff concedes that he indicated during the third call (the one on July 15, 2019) that he was at work, and so asked the Charter representative to either follow up by email, or provide a direct phone number for him to call her back at a later time – therefore plausibly inviting Charter to make the fourth and fifth calls.[4]  The Court has not found any hard cutoff for determining what volume and frequency of calls is sufficient to support an inference that an ATDS was used.  In *Sepehry-Fard v. MB Financial Services*, a case Plaintiff cites to for another point, the district court found that fourteen calls within a week "fail[ed] to support an inference that the calls were generated by an ATDS as opposed to the alternative inference that Plaintiff received a customer specific call through human agency."  No. 13-cv-02784-BLF, 2014 WL 2191194, at *3 (N.D. Cal. May 23, 2014).  If the Court had found another factor in Plaintiff's favor, it may have been inclined to find that, together with the first two factors and the alleged five calls within a twelve-day period sufficient to state a plausible claim here.  However, the Court does not find Plaintiff's remaining argument – that the Charter representative did not provide a direct number for him to call back – convincing, because the representative provided another Charter phone number for him to call.  Furthermore, Plaintiff is not arguing from a clean slate.  In his Original Complaint, he initially alleged that the July 15, 2019 call was an avatar call – meaning that Charter used pre-recorded messages.  He has since amended his claim to drop any mention of the use of pre-recorded messages, and now alleges that the call was with Michelle, a Charter representative – a change that the Court is concerned by (and that is the subject of Charter's motion for sanctions against Plaintiff and his counsel).

Plaintiff argues that "it is not reasonable to expect [plaintiffs] to know or plead with a high level of precision the technology responsible for allegedly automated calls."  Opp. to MTD at 5 (quotations omitted) (citing *Armstrong v. Investor's Business Daily, Inc.*, 18-cv-02134-MWF-(JPRx), 2018 WL 6787049, at *9 (C.D. Cal. Dec. 21, 2018)).  The Court recognizes this difficulty, and because of it, the Court grants Charter's motion to dismiss the Amended

---

[4] Charter, in its motion for sanctions, claims that Plaintiff expressly "request[ed] a return call during his July 15 conversation," MFS Reply at 4, therefore accounting for the two subsequent calls.  However, in resolving the motion to dismiss, the Court accepts Plaintiff's factual account of the call.

Complaint, but will provide Plaintiff with one more chance to amend his complaint, subject to a temporary stay in this action that the Court discusses next.  The Court notes that the Amended Complaint mentions a phone call from July 11, 2019, but that it says only that "[t]he call lasted approximately 11 seconds."  Amended Complaint ¶ 21.  Further information about that call, such as any statements made by Plaintiff or the caller, may help fix or defeat Plaintiff's allegation that an ATDS was used.

   C.  Motion for Discretionary Stay

Charter asks, as an alternative to dismissing the complaint, that the Court stay this case pending the U.S. Supreme Court's decision in a case from this term, *Barr v. Am. Ass'n. of Political Consultants*, No. 19-631, 140 S.Ct. 812 ("*AAPC*").[5]  The Court will dismiss the complaint, but because it intends to give Plaintiff one more opportunity to amend the complaint, it considers Charter's request for a stay.

Charter argues that the Supreme Court's decision in *AAPC* will potentially dispose of Plaintiff's putative class action because at issue there is the constitutionality of the automated-call restriction.  MTD at 6-8.  It argues that all three *Landis* factors weigh in favor of granting a stay.  The Court agrees that a temporary stay in this action through the end of June 2020 – when this Court expects a decision in *AAPC*[6] – is appropriate here.  Plaintiff argues a stay would subject him and others to further automated calls from Charter.  However, the stay here is less than three months, and any alleged harm to Plaintiff is minimal.  On the other hand, in the absence of a stay, Charter would be required to spend additional resources defending against this putative nationwide class action that may ultimately be rendered moot by the decision in *AAPC*.  Though the Court agrees with Plaintiff that it is not clear whether the Supreme Court will, as respondents ask for, invalidate the automated-call restriction entirely (as opposed to severing the government-debt exception), but it is certainly possible that the Supreme Court will provide some guidance generally in this area.  The possibility that the automated-call restriction will be invalidated (or at least explained further) warrants a brief stay here that will promote judicial economy.

---

[5] The Court is able to take judicial notice of Supreme Court proceedings.  *See Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995) (court "may take judicial notice of proceedings in other courts, whether in the federal or state systems").

[6] The Court notes that despite the ongoing COVID-19 pandemic, the Supreme Court has announced that oral argument for *AAPC* will proceed by telephone conference in May.  Press Release, United States Supreme Court (Mar. 16, 2020), https://www.supremecourt.gov/publicinfo/press/pressreleases/pr_03-16-20.

D.  Motion for Sanctions against Plaintiff and his Counsel

Charter moves for sanctions pursuant to Federal Rule of Civil Procedure 11 against Plaintiff and his counsel, arguing that they have not pursued this action in good-faith – either in filing the Original Complaint or the Amended Complaint.  Charter alleges that Plaintiff "knew Charter did not utilize a PRV [artificial or pre-recorded voice]" during the July 15, 2019 call, and yet nonetheless filed the Original Complaint asserting that Charter did.  MFS at 5.  According to Charter, Plaintiff amended his Original Complaint only after Charter presented him and his counsel with a recording of the July 15, 2019 call that "conclusively established Plaintiff spoke with a representative named 'Michelle,' not a computer bot as Plaintiff had falsely alleged."  *Id.* at 2.  Charter asserts that Plaintiff's counsel's failure to send a demand letter before filing the instant action suggests that Plaintiff's counsel did not conduct any kind of inquiry into the allegations before commencing this action.  Finally, Charter argues that because it provided Plaintiff with declarations from the vendors it used to make calls explaining that the vendors required people to manually initiate each call, *id.*, Plaintiff's decision to nonetheless file the Amended Complaint against Charter lacks good faith.  It claims that Plaintiff is purposely "avoid[ing] further dispositive motion practice on vicarious liability grounds," given the alleged involvement by the vendors in making the calls.  *Id.* at 5.

The Court does not find sanctions warranted here.  Plaintiff likely did not have his own recording of the July 15, 2019 phone call, and so the Court will give him the benefit of the doubt that a faulty memory was responsible for the initial allegations of an avatar call and that a more innocent explanation – rather than bad faith – is the reason why Plaintiff did not argue a vicarious liability theory in the Amended Complaint.  Finally, while the Court is concerned by the lack of a demand letter, it does not find that that, or anything else here, warrants the extraordinary remedy that Rule 11 sanctions represents.

IV.  **Conclusion**

The Court finds that the present motions can be ruled upon without the need for oral argument.  *See* C.D. Cal. L.R. 7-15.  Thus, the April 16, 2020 hearing date is taken off-calendar.

Based on the foregoing discussion, the Court **GRANTS** Charter's motion to dismiss with leave to amend one more time; **GRANTS** Charter's motion to stay the proceedings through the end of June; and **DENIES** Charter's motion for sanctions against Plaintiff and his counsel.  The Court sets a status conference with the parties on July 6, 2020; a joint report is due by July 2.

9